Arthur T. Foster, pro se.

Miles W. Lord, U. S. Atty., Minneapolis, Minn., and Patrick J. Foley, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before VOGEL, Chief Judge, BLACKMUN, Circuit Judge, and STEPHENSON, District Judge.

**Arthur T. FOSTER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18225.**

United States Court of Appeals
Eighth Circuit.

May 3, 1966.

VOGEL, Chief Judge.

Arthur T. Foster, appellant, brings this appeal in forma pauperis from the denial of his application for a writ of habeas corpus. The writ was sought on the grounds that appellant's court-appointed attorney, who represented appellant in matters pertaining to his current incarceration, was ineffective, inadequate and unprepared. A contrary determination by the District Court was rendered after a full evidentiary hearing held on September 7, 1965. At such hearing appellant was ably represented by Mr. Robert E. Lucas, who was appointed by the District Court for that specific purpose. Mr. Lucas is not the attorney challenged by the appellant in his application herein. Appellant brings this appeal *pro se*. We affirm.

In proceedings leading up to his instant incarceration, Foster was originally charged in an indictment containing two counts. Count No. 1 charged a violation of 18 U.S.C.A. § 2115 in that Foster did forcibly break into a building used in part as a United States Post Office at Chanhassen, Minnesota, with intent to commit larceny therein. Count No. 2 charged a violation of 18 U.S.C.A. § 1707, through the theft of $119.80 in money used by the United States Post Office Department. Both offenses were allegedly committed on July 13, 1961.

Appellant was initially arrested in Minneapolis, Minnesota, in August of 1961 by Minnesota State authorities on a charge of possession of narcotics. On August 17, 1961, appellant appeared in traffic court on an outstanding traffic violation and was sentenced to serve ten days. On August 21, 1961, appellant was arraigned in Hennepin County District Court on the narcotics charge, at which time he was represented by the local Public Defender's office.

After his arraignment in state court, appellant was interviewed once or twice by Sheriff Lester W. Melchert of Carver County, Minnesota. As a result of such interview(s), appellant admitted, in a signed statement dated August 22, 1961, his responsibility for several burglaries in Carver County, including the burglary of the Roundup Superette Grocery in Chanhassen, Minnesota, on July 13, 1961. The said grocery store contained the Chanhassen Post Office. Subsequently, on his plea of guilty to the state narcotics charge, appellant was sentenced to serve a term of five years in the Minnesota State Penitentiary at Stillwater. Appellant was still represented by the Minnesota Public Defender's office when he pleaded guilty to the narcotics charge. Sentence thereunder was imposed on December 7, 1961.

While in the Minnesota Penitentiary at Stillwater, appellant again confessed, this time to Postal Inspector Jack Wyatt, as to his part in the burglary at the Roundup Superette Grocery and Post Office. As already noted, appellant was then indicted for his part in this post office burglary. The attorney appointed by the court as a result of this indictment is the one in controversy herein. Appellant's current conviction and incarceration at the Federal Correctional Institution at Sandstone, Minnesota, came about through his having pleaded guilty to the theft charged in Count 2 of the indictment. Count 1 of the indictment was dismissed on motion of the United States at the time appellant received a three-year sentence on his plea of guilty to Count 2.

Appellant's principal allegation herein is that his court-appointed counsel at the time of his plea of guilty to Count 2 knew that the only evidence the government had to establish his guilt consisted of the two confessions mentioned above. Appellant contends that his attorney should have moved to suppress the confessions since he was induced to make them in reliance on promises that he would not be prosecuted for certain of the crimes involved or, if prosecuted, that he would be given concurrent rather than consecutive sentences. Without the admission of two confessions, it appears that the government might have had little or no evidence upon which to convict the appellant of either count of the indictment against him. Appellant claims that he asked his court-appointed attorney to move for the suppression of the confessions but that he, the attorney, would not do so. He allegedly agreed to plead guilty only when he realized the confessions were not to be challenged.

Appellant was represented by the court-appointed attorney involved herein while under indictment and when entering his final plea of guilty to Count 2. Appellant met with his court-appointed counsel three times. The first occasion was August 23, 1962, in the Federal Courts Building in Minneapolis. This interview was followed by an arraignment and appellant's entry of a plea of not guilty. The second interview took place at the Minnesota State Penitentiary at Stillwater, Minnesota, on approximately September 24, 1962, when appellant's

court-appointed counsel made the trip from Minneapolis to Stillwater for the purpose of seeing appellant and preparing for trial. During that interview, estimated to have lasted anywhere from half an hour to an hour and a half, appellant advised his court-appointed attorney that he desired to change his plea to guilty. The third occasion for an interview between the two men was on September 27, 1962, in the detention room in the Federal Courts Building in Minneapolis. This interview lasted from 20 to 30 minutes. At first appellant desired to maintain his original not guilty plea. During this time appellant and his court-appointed counsel discussed " * * * whether or not he would be running any great risk in pleading guilty to one count of the indictment and asking for a dismissal of the second." Finally, it was agreed that a plea of guilty would be entered. Upon appearing before the court, counsel for the United States stated:

> "At this time counsel informs me that they wish to withdraw their plea of not guilty to Count II of the Indictment and enter a plea of guilty to that Count, which is the theft of Postal property. At the time of sentencing, the United States would dismiss Count I charging the breaking into and entering a Post Office.

> "The Court: Well, you may proceed, Mr. Lamson [the clerk of court].

> "The Clerk: A plea of not guilty having been previously entered, do I understand you desire to change your plea now to guilty to Count II, is that correct?

> "The Defendant: Yes, sir.

> \* \* \* \* \* \*

> "The Court: I take it, Foster, that after a conference with your counsel you have decided to enter a plea of guilty to Count II, is that right?

> "The Defendant: Yes, Your Honor."

Whereupon, the matter was referred to a probation officer for pre-sentence investigation.[1]

On January 14, 1963, appellant was again before the District Court but at this time he was without his court-appointed counsel. On this date he was sentenced to serve a period of three years on his plea of guilty to Count 2. The court provided that " * * * the sentence shall be served consecutively to the sentence that you are now serving in the State Prison at Stillwater, Minnesota, which sentence was imposed upon you on December 6, 1961; * * *." As already noted, Count 1 was then dismissed.

At the hearing on appellant's petition for writ of habeas corpus in District Court, extended testimony was received from a number of persons, including the court-appointed attorney who represented appellant at the time he was arraigned and entered his plea of guilty. Appellant himself testified at substantial length. The record indicates quite clearly that during appellant's incarceration prior to his entry of guilty pleas in state and federal court, he was attempting to negotiate for exemption from prosecution for some crimes in exchange for a plea of guilty on others. Both state and federal officials deny making any promises or using coercion of any kind. In any event, appellant apparently has not as yet been prosecuted for various other burglaries admitted to have been committed by him in Carver County. We reemphasize, also, that when appellant

---

1. We note, parenthetically, that there is little or no doubt that the appellant actually did commit all of the crimes to which he confessed. As to the particular charges herein, he reaffirmed his guilt at the hearing below on his petition for writ of habeas corpus, whereat he testified as follows:

> "The Court: Well, Foster, you were guilty of the crime to which you pled guilty in State Court, to wit, having in your possession narcotics?
> "The Witness: Yes, Your Honor, I was guilty.
> "The Court: And you were guilty of breaking into this Post Office?
> "The Witness: Yes, Your Honor."

pleaded guilty to Count 2 of the indictment herein the government did move for and obtained a dismissal of the charges in Count 1 as it pertained to the Post Office burglary.

The attorney who was appointed to represent the appellant testified, among other things, that he was aware of the confessions made by the appellant and of the attending circumstances, including the appellant's initial arrest on the state narcotics charge. He had examined the confessions and it was his conclusion that they were "admissible". Taking all of this into consideration, the attorney advised that his client plead guilty and obtain a dismissal of Count 1.

In the strikingly similar case of Edwards v. United States, 1958, 103 U.S. App.D.C. 152, 256 F.2d 707, 709–710, certiorari denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82, Judge Burger stated, in upholding that appellant's conviction:

"But there was much counsel might have done, appellant now tells us. Counsel might have argued the illegality of the arrest and might have moved to suppress evidence obtained by illegal search and seizure, and illegal confessions. We agree that counsel might have done these things, and perhaps, guided by hindsight, other things; but we do not agree that failure to do so was such ineffective assistance of counsel as to warrant a new trial. But we need not rest our decision on this ground, for an even stronger ground is available.

"It must be realized that this is not a case in which proof of guilt depended upon a trial. In such cases, the accused usually relies to a great extent on counsel to conduct an effective defense, because the accused does not know enough of the law to do so himself. While the accused may have to take the consequences of a poor defense, he may at least say the fault was not his own. But this is not so when he pleads guilty. Here the deed is his own; here there are not the baffling complexities which require a lawyer for

illumination; if voluntarily and understandingly made, even a layman should expect a plea of guilty to be treated as an honest confession of guilt and a waiver of all defenses known and unknown. And such is the law. A plea of guilty may not be withdrawn after sentence except to correct a 'manifest injustice,' and we find it difficult to imagine how 'manifest injustice' could be shown except by proof that the plea was not voluntarily or understandingly made, or a showing that defendant was ignorant of his right to counsel. Certainly ineffective assistance of counsel, as opposed to ignorance of the right to counsel, is immaterial in an attempt to impeach a plea of guilty, except perhaps to the extent that it bears on the issues of voluntariness and understanding." (Footnote citations omitted.)

Here, as in *Edwards*, there is little doubt but what appellant's plea of guilty was voluntarily and understandingly made. Appellant knew of the consequences of his plea. He had pleaded guilty to at least six other felonies between 1936 and 1957 and had served a very substantial amount of time following his past pleas of guilty.

The record indicates that appellant's court-appointed counsel was not present at the time the appellant was sentenced. Appellant in his petition seems to make no point of this, but nevertheless has attached to his brief a copy of a letter from the court-appointed attorney explaining that his absence at the time of sentencing was due to a mistake in his schedule. The record clearly indicates, however, that appellant was well aware of his rights and that being fully aware thereof, he voluntarily waived the presence of his counsel and insisted, over the suggestion of the trial court that the matter be postponed, that the sentencing proceed.

We find no error in the District Court's determination that the plea of guilty was voluntarily and understandingly made, that appellant's constitutional rights were in no way violated, and

that his charges against his court-appointed attorney were groundless. The court's denial of the application for a writ of habeas corpus is in all things affirmed.