**James Paul ROACH, Appellant,**

v.

**John E. BENNETT, Warden of Iowa State Penitentiary at Fort Madison, Iowa, Appellee.**

No. 18914.

United States Court of Appeals
Eighth Circuit.

April 15, 1968.

---

James Paul Roach, pro se.

Richard C. Turner, Atty. Gen. of Iowa, and William A. Claerhout, Asst. Atty. Gen., Des Moines, Iowa, on brief for appellee.

Before VOGEL, Senior Circuit Judge, LAY, Circuit Judge, and BECKER, Chief District Judge.

LAY, Circuit Judge.

Appellant appeals from the district court's denial of his petition for a writ of habeas corpus. On April 21, 1964, appellant pleaded guilty in the presence of his counsel to second degree murder of his wife, Melba Louise Roach, in Jasper County, Iowa. He was sentenced to the Iowa Penitentiary for sixty years imprisonment. Thereafter, on March 12, 1965, he petitioned for a writ of habeas corpus. This was denied after a hearing in Lee County District Court on September 8, 1965. The denal of his petition was affirmed on February 7, 1967. Roach v. Bennett, Iowa, 148 N.W.2d 488. Appellant then filed his petition in the federal district court seeking further relief. The federal district court, the Honorable Roy E. Stephenson, denied his petition without further hearing. This court granted probable cause for appeal. Appellant has sought appointment of counsel both in the state and federal courts throughout all collateral proceedings. This at all times has been denied. He has appeared pro se throughout these proceedings.

Among appellant's many contentions upon appeal he includes:

(a) That he was held at the scene of the crime for three hours and forced to submit to questioning concerning said offense.

(b) That he was denied the right to call, consult or have appointed an attorney on the date of his arrest and was held incommunicado for eight days and was refused the right to ad-

vice or appointment of counsel and was refused correspondence with members of his family.

(c) That he was released from the Mental Health Hospital as unimproved and not cured and that he thereupon entered an unintelligent plea of guilty before a different district judge.

(d) That no hearing was ever had to determine his sanity.

The State of Iowa contends that appellant has had a full hearing, and as set forth by the Supreme Court of Iowa that there was no proferred evidence in the habeas corpus hearing which would indicate his plea to the crime of second degree murder was coerced or involuntarily entered. The opinion of the Supreme Court of Iowa reads:

"* * * [*Appellant*] *makes no contention that this plea was coerced* or was entered when he was not duly advised by his counsel *or that the court acted improperly in accepting his plea.*

* * *." (Emphasis ours).

148 N.W.2d 488 at 491.

The Supreme Court of Iowa indicates that Roach gave admissions and statements as to his guilt during his first two days of detention without being advised of his right to counsel. However, the court indicates that his plea of guilty was prior to June 22, 1964, the date of the Escobedo v. State of Illinois case, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and that he therefore cannot raise the denial of counsel.

During the course of the habeas corpus hearing before the state district court, when appellant was attempting to examine the sheriff, it is reported:

The Sheriff testified: "Well, he seemed to be a little upset. Of course being in jail by himself, I thought was probably what brought it on. Upset in that I mean he didn't have anything to say or anything like that. It's kind of hard to explain. I didn't notice that he was very much out of the ordinary until he attempted to commit suicide by cutting his wrist."

* * * * * *

"The Court: Am I to understand, Mr. "Roach, you are now claiming you were insane at the time this crime was committed?

"Mr. Roach: Absolutely not, your Honor."

* * * * * *

"Q. (by Roach) You feel that the defendant because of the bewilderment and chain of events that had brought him to his present circumstances, do you feel that he could comprehend everything promptly and correctly and so on?

"(Atty. Gen.)—That's incompetent, irrelevant and immaterial. *There has been no claim made of this type of incapacity.*

"The Court: *Sustained.* * * *"* (Emphasis ours). (Transcript pp. 137–40)

Among appellant's contentions in his original petition for habeas corpus filed in the state court was the allegation that "defendant is called mentally non-sui-juris * * * (while no where) in the files of any court can a ruling be found to support such action." This allegation of "mentally non-sui-juris" appears in the application of his attorney to obtain a psychiatric examination in the district court prior to appellant's plea. In the various rambling briefs (five in number) filed by appellant in this court, we now find arguments which are directed to appellant's incompetency.

Appellant files a newspaper article of March 16, 1964, relating to the murder of his wife, which relates (1) Roach's previous commitment in 1961 to the State Mental Institute at Clarinda; (2) that as a child he had suffered a concussion in a streetcar accident; (3) that at the age of fifteen he was wounded by mortar fire as a marine in Saipan; and (4) that the family had been concerned over his erratic behavior for some time. He then, in his brief before us, in self-contradictory terms, alleges that this "attack of (his) mental incapacity directed to this petitioner is the result of long-standing

venom, personal animosity by the mentioned attorneys, officials. * * *" Perhaps this inconsistency is somewhat explained by the State Mental Health Institute's earlier letter written to Judge L. R. Carson, Jasper County District Judge, prior to appellant's plea of guilty, based upon a pre-trial examination:

"He is unrealistic in the sense that in attempting to deny psychopathology he ignores or is unaware of its significance for his present predicament. *The somewhat absurd lengths to which he goes in this respect suggests that he has long attempted to deny any sense of personal inadequacy.* * * * In any event, these data are suggestive of a schizophrenic-like person with paranoid features whose behavior can achieve psychotic proportions, especially under what, or him, constitutes undue stress." (Emphasis ours).

This examination was March 20, 1964, and Roach pleaded guilty on April 21, 1964.

On the same psychiatric report submitted by the state is an indication of abnormal changes on the electroencephalographic test and a diagnosis of (a) "Chronic Brain Syndrome Associated with Brain Trauma, Minimal," and (b) "Paranoid Personality." Appellant offered the record of the Mount Pleasant Health Institute of March 26, 1964, which read:

"Discharges: Discharge direct from Institute Unimproved (*not cured*) March 26, 1964." (Emphasis ours).

The federal district court denied appellant a hearing on the ground that a plenary hearing had taken place before the state district court upon appellant's petition. The federal district court likewise found that there existed "no evidence that the petitioner's plea of guilty was not freely, voluntarily and intelligently given." We feel that this finding is true, but only for the reason that it was not considered as an issue in the previous state hearing.

It is manifest from the original petition and transcript in the state district court that petitioner did not raise the issue of mental incompetency existing as of the time of the plea or as of any other time. As above set forth, the record reveals only appellant's abortive attempt to show the "involuntariness" of his plea, to which the court sustained the attorney general's objection as not being relevant. The first time such a claim is made is in the federal district court. Because of this fact, notwithstanding his prior state hearing, the petitioner is entitled to a plenary hearing as to his competency to make a plea (Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135 (1954); Thomas v. Cunningham, 313 F. 2d 934 (4 Cir. 1963); Kibert v. Peyton, 383 F.2d 566 (4 Cir. 1967)), which should also include any other evidence which relates to the voluntariness of the same. See Grindstaff v. Bennett, 389 F.2d 55, (8 Cir. 1968); Smiley v. Wilson, 378 F.2d 144 (9 Cir. 1967).[1]

---

1. "* * * Smiley alleged that his plea of guilty had been motivated by the giving of a coerced confession or incriminating statement. Although the existence of a coerced confession does not necessarily invalidate a conviction based upon a subsequent plea of guilty, the existence of such a confession is to be considered in determining the voluntariness of the plea if it is alleged that the confession motivated the plea. This being the case, the plea of guilty * * * does not preclude Smiley from raising the coercion argument in his habeas corpus petition as a basis for the averment that the plea of guilty was involuntary. * * *
   * * * * *

"In our opinion, neither an assumption nor a finding upon evidence that a defendant had competent counsel, warrants rejection, without a hearing, of an issue based upon an adequate factual allegation that a plea of guilty was primarily motivated by a confession obtained by physical or mental coercion. The adequacy of counsel and the voluntariness of a plea are not sufficiently interrelated so that the proof of the first establishes, as a matter of law, proof of the second.

"It was therefore error to reject, on the basis of the pleadings, the coerced confession * * *." 378 F.2d 144, 147–148.

Ordinarily, we would affirm the lower court's denial of the writ on the ground that appellant has failed to exhaust his state remedies. In discussing the Nebraska Post-Conviction Act, we have observed:

"Nevertheless, the teaching of Fay v. Noia, [372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)] emphasizes that a federal district court should not 'upset a state conviction without an opportunity to the state courts to correct a constitutional violation.' The rationale of the rule aids petitioner. The state district court is cognizant of the litigation and if constitutional guarantees not otherwise litigated need correction, the state courts are the logical courts to hold the hearing and review their own cases.

"Title 28 U.S.C. § 2255 providing for federal post-conviction relief was passed for correcting erroneous sentences of federal prisoners without cumbersome resort to habeas corpus. It was designed to afford the same rights to a petitioner in another, but more convenient, forum. Likewise, the Nebraska Post-Conviction Act inures to the direct benefit of the petitioner, providing a more expeditious remedy to correct a possible erroneous sentence. It is compelling that the 'federal system entrusts the states with primary responsibility' in their own criminal cases. This policy was recently affirmed by Mr. Justice Brennan, when he said:

"'* * * Although relief may ultimately be denied, that the state courts should have the opportunity to decide in the first instance is a course consistent with comity, cf. 28 U.S.C. § 2254, and a full and fair hearing in the state courts would make unnecessary further evidentiary proceedings in the federal courts. See Townsend

v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 * * * ' Giles v. State of Maryland, Feb. 20, 1967, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737."

Barry v. Sigler, 373 F.2d 835, 838 (8 Cir. 1967).

■ As this court recently observed in Johnson v. Bennett, 386 F.2d 677 (8 Cir. Nov. 8, 1967), the State of Iowa unfortunately has not as yet passed a post-conviction act, whereby the sentencing court can more conveniently and adequately pass upon the previous proceedings. Nevertheless, the Iowa Supreme Court recognizes the right to raise federal constitutional questions in a habeas corpus proceeding in the district where the prisoner is incarcerated.[2] See Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). Therefore, we feel petitioner's claims should be first reviewed by the state court.

■■ However, in order to save time and avoid any misunderstanding, we feel it necessary to discuss an important facet relating to the hearing to be held. The Supreme Court of Iowa has raised sua sponte the "interesting question as to whether appellant had a constitutional right to the assistance of state-appointed counsel in the prosecution of habeas corpus action." Five justices, constituting the majority, held that no such right existed. Three justices dissented, and voted to "reverse and remand for appointment of counsel and a new hearing." 148 N.W.2d at 492. See also Waldon v. District Court, 256 Iowa 1311, 130 N.W. 2d 728, noted in 50 Iowa L.Rev. 1246 (1965). In post-conviction proceedings, we have generally held that no constitutional right exists under the Sixth Amendment, as to appointment of counsel. See Noble v. Sigler, 351 F.2d 673 (8 Cir. 1965). Nevertheless, appointment of counsel has been recognized as being within the sound discretion of the

---

2. Of course, among the beneficial objects of a post-conviction act is the equitable distribution of post-conviction claims to the district courts throughout the state. Venue lies within the district of the sentencing court, although provision is likewise made for change of venue. This can effectively be done by court rule as in Missouri under their Rule 27.26, or by statute as in Nebraska, Neb.Rev.Stat. §§ 29–3001 to 29–3004 (Supp.1965).

federal trial judge. See Dillon v. United States, 307 F.2d 445, 448 (9 Cir. 1962); LaClair v. United States, 374 F.2d 486, 488–489 (7 Cir. 1967). However, if this be the sole ground, we have no cause to review appointment of counsel in state proceedings. This court cannot review discretionary acts of a state tribunal, unless they touch upon constitutional rights of the accused.

■ We must recognize that under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (see also Tit. 28 U.S.C. § 2254), a state prisoner is entitled to a hearing *in federal court* where "the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing" and "the material facts were not adequately developed at the state-court hearing."

■ Implicit in these standards for an "adequate" and "fair" hearing, we recognize that under certain circumstances, it is not only a better practice to assign counsel, but it can be a necessary demand for compliance with due process requirements. Cf. Hampton v. State of Oklahoma, 368 F.2d 9 (10 Cir. 1966); Anderson v. Heinze, 258 F.2d 479 (9 Cir. 1958); United States ex rel.

Wissenfeld v. Wilkins, 281 F.2d 707, 716 (2 Cir. 1960). Certainly, anything less than a meaningful presentation of the petitioner's claims is the equivalent of no hearing at all.

■■ The circumstances that should exist to justify appointment of counsel will naturally vary, depending upon the legal contentions raised, the factual issues presented [3] and the background of the individual involved. We need only comment that where contentions raised are not frivolous on their face, and if it appears upon the court's examination of the record that it is doubtful whether petitioner can obtain an adequate hearing without the effective assistance of counsel, then the better practice would be to appoint counsel. With competent counsel acting on a petitioner's behalf future repetitive claims and petitions may well be obviated. Counsel can amend the petition and incorporate all possible grounds for one hearing, and thereby avoid multiple hearings. The instant case presents a good faith claim of "mental incompetency" at the time of the plea. Taking into consideration the confusing background of appellant's own claims, as well as the record upon appeal and the factual issues raised, we

3. In Sanders v. United States, 373 U.S. 1 at 21, 83 S.Ct. 1068 at 1081, 10 L.Ed.2d 148 (1963), the Supreme Court said where a substantial claim is presented requiring a full evidentiary hearing "the sentencing court might find it useful to appoint counsel." And it has been said, "If * * * substantial and complex factual issues are raised, counsel should then be appointed * * *." United States v. Wilkins, 281 F.2d at 716; and that appointment of counsel depends upon "a reasonable probability that an issue which is not plainly frivolous may be presented * * *." Anderson v. Heinze, 258 F.2d at 482.

State courts have presented different approaches. E. g., in Alaska in a post-conviction proceeding appointment of counsel is provided if the petition presents an issue requiring a hearing. Nichols v. State, 425 P.2d 247 (Alaska 1967). The rule is similar in Idaho. Austin v. State, 91 Idaho 404, 422 P.2d 71 (1966), but cf. Wilbanks v. State, 91 Idaho 608, 428 P.

2d 527 (1967). In New York, an indigent is entitled to counsel upon request. People ex rel. Jenks v. McMann, 27 A.D.2d 580, 275 N.Y.S.2d 399 (N.Y.App.1966). Only a "possible basis" need be suggested. People ex rel. Williams v. LaVallee, 19 N.Y.2d 238, 225 N.E.2d 735 (1967). In Maryland appointment is required by court rule. Taylor v. Director, Patuxent Institution, 1 Md.App. 23, 226 A.2d 358 (1967). In Missouri it is discretionary, but preferred in all instances. State v. Garner, 412 S.W.2d 155 (Mo.Sup.Ct.1967). In Kansas, only if substantial questions of law or triable issues of fact are presented. Carter v. State, 199 Kan. 290, 428 P.2d 758 (1967). See also Harper v. State, 201 So.2d 65 (Fla.1967). It is reversible error in Pennsylvania to fail to make an appointment. Commonwealth v. Hoffman, 426 Pa. 226, 232 A.2d 623 (1967). See also Commonwealth v. Mitchell, 427 Pa. 395, 235 A.2d 148 (1967) where it is pointed out that the Pennsylvania rule makes appointment mandatory.

feel that a full and fair hearing would necessitate the appointment of competent counsel to lend his assistance to appellant in the presentation of the issues raised.

Accordingly, the order of the district court dismissing the petition for writ of habeas corpus is vacated, with directions to stay further proceedings until such time that appellant has filed a new petition in the state district court along with an application for appointment of counsel to conduct a plenary hearing on appellant's claims of incompetency or involuntariness of his plea. In the event the state court denies appellant a plenary hearing or the appointment of counsel, he may file an application to reopen this proceeding in the federal district court wherein counsel will then be appointed and a plenary hearing will be held. Cf. Worley v. Swenson, 386 F.2d 186 (8 Cir. 1967).

This action is reversed and remanded with directions to stay further proceedings and to take such other action necessary consistent with this opinion.