In the Matter of John PARKER, on Habeas Corpus.

State of South Dakota and Don R. Erickson, Warden, Appellants.

No. 19784.

United States Court of Appeals, Eighth Circuit.

March 23, 1970.

R. James Zieser, Asst. Atty. Gen., Pierre, S. D., for appellants; Gordon Mydland, Atty. Gen., on the brief.

Gary J. Pashby, Sioux Falls, S. D., for appellee.

Before MATTHES, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

The State of South Dakota appeals from an order of the federal district court granting a conditional writ of habeas corpus [1] to the petitioner John Parker. On November 6, 1950 Parker pleaded guilty in the state court in Brookings County, South Dakota, to a charge of murdering his wife. The crime took place on October 25, 1950. Parker was represented at the time of his guilty plea by Mr. Walter Aaberg, Brookings attorney. On August 4, 1952, Parker was granted an evidentiary hearing in the state court on his petition for a writ of habeas corpus. This writ was denied by the Circuit Court of Minnehaha County, South Dakota. Thereafter, Parker appealed to the Supreme Court of South

---

1. The court gave the state 90 days from the date of final judgment in which to retry Parker, otherwise the writ was to be granted.

Dakota. On appeal the judgment of the Circuit Court of Minnehaha was affirmed. State ex rel. Parker v. Jameson, 75 S.D. 196, 61 N.W.2d 832 (1953). Fifteen years later the petitioner sought relief in the federal district court. On December 18, 1968, a hearing was held wherein the original state transcripts of the guilty plea of November 6, 1950, and the August 4, 1952, state habeas corpus transcript were offered in evidence. The only additional oral testimony presented before the federal court was that of the Clerk of Courts of Brookings County, South Dakota, which verified that Parker's attorney, Mr. Aaberg, from 1931 until November 1950 had been the attorney of record in five other criminal cases before his representation of Parker. The federal district court reviewed only the state court record and on March 25, 1969, granted petitioner a writ of habeas corpus. In re Parker, 297 F.Supp. 367 (D. S.D.1969). This appeal followed. We reverse with directions to dismiss the petition.

The federal district court in granting the writ of habeas corpus reviewed Parker's testimony given in the 1952 state post-conviction hearing. The district court found: (1) that Parker had asked the sheriff to call certain designated lawyers to represent him and that the sheriff had lied to him by telling him that he had called the lawyers requested but that none of them would take his case; (2) that at the time of the guilty plea petitioner was represented by Walter Aaberg,[2] a Brookings attorney who had previously represented petitioner on civil matters; (3) that the sheriff likewise lied in stating to petitioner that (a) his family had left him and would not be around should he stand trial and (b) that a mob had formed and the sheriff was not sure whether he could control one if it formed again; (4) that Aaberg (a) did not ask petitioner any of the details of the crime that he was charged with, (b) did not ask how his wife's death occurred, (c) failed to make an investigation of the crime and (d) did not advise him of his rights prior to his plea of guilty on November 6, 1950; and (5) that the sheriff and Mr. Aaberg were both deceased at the time of the federal habeas corpus proceeding, but were available in 1952 to refute Parker's testimony although not called upon by the state to do so.

The federal district court found that petitioner's guilty plea resulted from the psychological coercion by the sheriff and from the denial of the effective assistance of counsel. The defendant was 50 years old at the time of the crime and had had a limited education (fifth grade). The district court, relying upon Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958),[3] held

2. Parker's testimony is somewhat ambiguous as to how Walter Aaberg came to represent him. In contrast to Parker's testimony that Sheriff Clausen refused to call an attorney to represent him for the criminal charge, Parker said that Clausen contacted attorney Aaberg, at his request, to help him with his legal problems surrounding his farm property. According to Parker, Mr. Aaberg said he could not represent him in the criminal case since he was a justice of the peace. Aaberg, however, did appear for Parker at the arraignment and Parker duly acknowledged him as his attorney at that time.

3. Assuming that Parker's testimony concerning the sheriff's refusal to contact any lawyer, except attorney W. M. Aaberg, could withstand the test of self-contradic-

tion, which on its face it has difficulty doing, Crooker is not applicable here since there is no showing of prejudice by the alleged delay in the appearance of counsel. In Crooker, the Supreme Court pointed out:

"Under these principles, state refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits, Chandler v. Fretag [348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4], supra, but also if he is deprived of counsel for any part of the pretrial proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' Lisenba v. People of State of California, 314 U.S. 219, 236 [62 S.Ct. 280, 86

that Parker was denied counsel of his own choosing and that he had likewise been denied effective assistance of counsel in that his retained attorney, W. M. Aaberg, (1) failed to provide minimal standards of assistance and (2) did not have adequate qualifications to provide a criminal defense in a capital case.

■ The 1952 transcript of the state habeas corpus hearing was the sole basis upon which the federal district court based its finding. In a federal habeas corpus proceeding under 28 U.S.C. § 2254(d), as amended, (Supp. 1959–1967) it is provided that the state court determination of a factual issue "shall be presumed to be correct" unless the applicant establishes a circumstance, therein enumerated, which proves the unreliability of the state proceeding. See United States ex rel. Thomas v. Maroney, 406 F.2d 992 (3 Cir. 1969); Maxwell v. Turner, 411 F.2d 805 (10 Cir. 1969); Heyd v. Brown, 406 F.2d 346 (5 Cir. 1969); Maes v. Patterson, 401 F.2d 200 (10 Cir. 1968); Woodington v. Mathews, 401 F.2d 125 (7 Cir. 1968); Justus v. New Mexico, 378 F.2d 344 (10 Cir. 1967); Midgett v. Warden, 329 F.2d 185 (4 Cir. 1964). There exists here no contention that the 1952 state proceeding was not a full, fair and adequate hearing or that it in any way failed to meet the standards set forth in § 2254(d) (1–8). Cf. Hawkins v. Bennett, 423 F.2d 948 (8 Cir. 1970); Roach v. Bennett, 392 F.2d 743 (8 Cir. 1968). The federal district court in fact relied upon the exact testimony taken in the state proceeding. The federal district judge made no finding that the 1952 state court factual determination was *not* supported by the record. Under these circumstances, "the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the state court

was erroneous." See § 2254(d). This burden was not satisfied.

■ To avoid misunderstanding, the statute does not replace the federal court's constitutional obligation to make its own independent determination on federal questions. The Supreme Court has made clear that a federal court's consideration of the constitutional question shall be plenary. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). As Mr. Justice Frankfurter said in Brown v. Allen, 344 U.S. 443, 506, 508, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1952):

> "On the other hand, State adjudication of questions of law cannot, under the habeas corpus statute, be accepted as binding. It is precisely these questions that the federal judge is commanded to decide."

\* \* \* \* \* \*

> "Although there is no need for the federal judge, if he could, to shut his eyes to the State consideration of such issues, no binding weight is to be attached to the State determination. The congressional requirement is greater. The State court cannot have the last say when it, though on fair consideration and what procedurally may be deemed fairness, may have misconceived a federal constitutional right."

See also Townsend v. Sain, 372 U.S. at 318, 83 S.Ct. 745; Doerflein v. Bennett, 405 F.2d 171 (8 Cir. 1969). However, where the state record demonstrates procedural fairness and sufficient evidence exists to support the state court's factual findings, the statute as well as the legislative purpose of § 2254(d) makes clear that these findings are to be presumptively correct absent a showing of constitutional deficiency in the state proceeding. S.Rep. No. 1797, U.S.Code Cong. & Adm.News, p. 3663 (89 Cong. 2d Sess. 1966). Under these cir-

L.Ed. 166] (1941)." *Id.* at 439, 78 S.Ct. at 1292. (Emphasis ours.)
*Crooker*, of course, as it relates to right of counsel at the critical stage of an accusatory proceeding is no longer followed. Miranda v. Arizona, 384 U.S. 436, 479 n. 48, 86 S.Ct. 1602, 16 L.Ed.2d 694

(1966); Escobedo v. Illinois, 378 U.S. 478, 491–492, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). However, neither *Escobedo* nor *Miranda* are retroactive. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

cumstances, and in view of the fact that there is no claim that the state court has misconceived any federal constitutional right, we feel the federal district court was in error in totally disregarding the state's findings.

In the instant case the federal district court's conclusion that petitioner's retained counsel failed to provide effective assistance cannot be weighed in isolation. This claim, to be relevant, must in some way demonstrate petitioner's ignorance or misunderstanding of his overall rights so as to affect the voluntariness of his guilty plea. Kress v. United States, 411 F.2d 16 (8 Cir. 1969); Foster v. United States, 359 F.2d 497 (8 Cir. 1966); Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707 (1958); Scherk v. United States, 242 F. Supp. 445 (N.D.Cal.1964), aff'd 354 F.2d 239, cert. denied, 382 U.S. 882, 86 S.Ct. 174, 15 L.Ed.2d 122; Mordecai v. United States, 252 F.Supp. 694 (D.D.C.1966).

Nowhere does Parker assert that he was misled by counsel or given improper advice. Parker's claim of inadequacy of counsel rests upon his attorney's prior inexperience and his naked statement that the lawyer did not investigate the facts or properly advise him. Nowhere does Parker even assert that his plea of guilty was not voluntarily made. As indicated, there must be a showing of cause and effect, i. e. that the inadequacy of counsel contributed in some manner to an involuntary guilty plea. The record does not contain any suggestion of threats or promises made to the defendant in order to induce the plea of guilty. Cf. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962). The fact that a defendant's counsel has not tried many criminal cases cannot be the key to unlock the prison door. In order to sustain a claim of ineffective counsel there must be an affirmative factual basis demonstrating counsel's inadequacy of representation. Unless Parker's conclusory statements may be fully credited as being true, there exists no evidence to sustain the claim of ineffective assistance of counsel.

The same reasoning applies to petitioner's alleged prior requests for other counsel to represent him, as well as the sheriff's alleged conversation concerning the formation of a mob. Even if one assumes these statements to be true, the record does not in any way demonstrate that this conduct had coerced petitioner to plead guilty. Moreover, the state judge undoubtedly discredited Parker's subsequent statements by reason of his prior testimony given at the time of the state proceedings when Parker entered his guilty plea. Where the factual determination turns upon the credibility of the petitioner's story the state trial judge possesses peculiar competence to make judgment during the timely examination as to that credibility. United States ex rel. Bruno v. Herold, 408 F.2d 125, 129 (2 Cir. 1969); Texas v. Payton, 390 F.2d 261, 272 (5 Cir. 1968). Parker's claim that he was not informed of his rights at the time of his guilty plea is directly refuted by the state judge's questions directed to him. The Supreme Court of South Dakota observed in its opinion, 61 N.W.2d at 833–835:

"In the case at bar a duly licensed and practicing lawyer of Brookings, South Dakota, appeared with and for appellant at the time he was sentenced. The record reveals that in the preliminary part of the proceeding in which appellant entered his plea of guilty, he answered a question directed to him by the presiding judge as to whether the attorney present was appellant's attorney, and other questions, as follows:

'A. Yes, he is.

'Q. I assume that he has fully informed you of all your rights? A. Yes.

'Q. Your right to a trial by jury? A. Yes.

'Q. Your right to be confronted by the witnesses against you? A. Yes he has.

'Q. And to have witnesses subpoenaed in your own behalf. A. Yes.

'Q. You are thoroughly familiar with the nature of the offense with

which you are charged, are you? A. Yes.

'Q. Charged with murder, and you know what the penalty for that offense is? A. Yes.

"Q. And are you ready to be arraigned at this time? A. [by the attorney] Yes, Your Honor.'"

Then following the reading of the information against appellant the judge continued to question and appellant answered as follows:

" 'Q. You have heard this Information? A. Yes.

'Q. Do you understand it thoroughly? A. Yes, I do.

'Q. And are you ready to enter your plea to it at this time—or do you want to enter your plea now? A. Yes.

'Q. And what is your plea—guilty or not guilty? A. Guilty.'"

\* \* \* \* \* \*

"The record also discloses that appellant had the means of employing a lawyer, that the lawyer who appeared for him had previously represented him in civil matters, that appellant and the attorney had conferred several times between the arrest and the judgment and that the attorney appeared not as a court appointed attorney but by appellant's own arrangement; also that appellant had previous court experience in criminal matters; \* \* \*."

"Judging from the record here set out it would be hard to conceive how a court passing judgment could deal more fairly with a defendant or more considerately with the rights of one accused of crime." \* \* \*

"Where, as in this case, a defendant seeks not to supply an omission in or establish an inconsistency with the original record but to directly contra-

dict it, this burden is heavy. Centers v. Sanford, 5 Cir., 120 F.2d 217. According to the findings of the circuit court appellant failed to carry the burden; and the record amply supports the findings that appellant was fairly and competently represented by counsel and was fully advised of all his rights."

There exists as well, substantial evidence to sustain the state court's determination that Parker's 1950 plea was voluntarily made. Parker made a full confession of shooting his common-law wife, burying her in his basement, and then attempting to dispose of her clothes to make it appear that she had gone on a trip. This confession preceded his guilty plea and was made in the presence of several witnesses including his retained attorney. There was no attempt in the state habeas corpus proceeding by Parker to assert that this confession was not voluntary or that it was in any way contrary to the truth. The confession of the crime was read in detail by the state's attorney during the November 6, 1950, guilty plea proceeding. It was acknowledged by Parker as being the truth. Thus there was entered before Judge McKnight a guilty-plea-in-fact. In the 1952 habeas proceeding Parker admitted shooting his wife at least once and burying her in the basement. His belated claim of an accidental shooting is fully impeached by the state verification in the 1950 proceeding that Mrs. Parker was actually shot three or four times with bullets from Parker's gun. The original file contains an affidavit from the state's attorney and the trial judge to this effect. Parker's present attempt to claim that his plea was not voluntary seems rather shallow in view of the extended November 6, 1950, proceedings in the state circuit court.[4]

---

4. Parker's guilt in fact is further corroborated by his statements in the 1952 state habeas corpus proceedings when he was questioned about his guilty plea entered before Judge McKnight in 1950:

"Q. And did the Court ask you this: 'And this confession and this second con-

fession he read, you listened to all of that, is that exactly as you want the Court to understand the facts to be?' Did he ask you that question?

"A. Well, I don't remember. He might have.

■ We think § 2254(d) serves a two-fold purpose. It serves as a bond to cement state-federal relations by giving presumptive correctness to a state court's factual determination. At the same time the statute serves to recognize the mandate of the supremacy clause that the ultimate decision of federal constitutional law remains in the federal courts.[5]

■ We perceive no abdication of constitutional obligation or principles of federalism in our holding. The legislative history of § 2254(d) makes clear that one of the purposes of the statute is to encourage state courts to hold evidentiary hearings in post-conviction cases involving state prisoners. The distinguished committee of the Judicial Conference reported:

"It is the opinion of your committee that the proposed legislation, if enacted, will be a strong inducement to the States that have not already done so to provide adequate postconviction remedies and procedures and to make and keep available records of evidentiary matter in criminal and postconviction proceedings, and to the State courts in criminal proceedings to safeguard the constitutional rights of defendants." S.Rep. No. 1797, supra at p. 3665.

Once a state court has conducted a post-conviction proceeding and there exists no deficiency as set forth in § 2254(d) (1–8), the federal courts should be extremely reluctant to disturb the sensitive balance of federal-state comity by review of a state court's determination of disputed facts. If all constitutional requirements are met, and there exists no state misconception of federal rights, then the congressional purpose under the act is to require "convincing evidence" before a state finding of fact may be set aside. Of course, the presumptive correctness of the state finding is always rebuttable. See Brown v. Crouse, 399 F.2d 311 (10 Cir. 1968). However, the convincing evidence necessary to demonstrate that the state court's findings were erroneous is totally absent here.

Judgment reversed and remanded with directions to dismiss.

"Q. And did you not reply: 'Yes, it is.'?
"A. It could be that I did.
"Q. And he asked you: 'Those are the true facts?' And you replied, 'Yes, they are the true facts.' Is that right?
"A. *They were the true facts that I gave him, yes.*
"Q. (Reading) 'You are not covering up anybody else in this matter?' And you replied: 'No, I am not.'? Is that right?
"A. That's right.
"Q. That's what you told the Court, isn't it?
"A. Yes, I think that's what I told him.
"Q. Then the Court further asked you: 'There's no question about any of these details then, is that right?' Did he ask you that?
"A. I don't remember that.
"Q. And did you not reply: 'There isn't'?

"A. That could be. I wouldn't say either way on that for I don't know. I don't remember." (Emphasis ours.) Transcript p. 47.

5. In most instances, whether a constitutional right has been denied will depend upon resolution of mixed questions of fact and law. For example, whether a confession is "voluntary" might turn on the factual issue as to whether a defendant's testimony that he was physically beaten was true or whether the contradiction and denial of this alleged fact by law enforcement officials should be credited. Once this purely factual question is resolved, then the legal conclusion of "voluntariness" remains. It is the latter issue that a federal court must always review de novo and upon which a federal court must always make an independent determination. Townsend v. Sain, *supra*, 372 U.S. at 318, 83 S.Ct. 745.