# STATE ex rel. PARKER, Appellant v. JAMESON, Respondent

## (61 N. W.2d 832)

(File No. 9380.  Opinion filed December 30, 1953)

**Henry C. Mundt,** and **Acie W. Matthews,** Sioux Falls, for Appellant.

**Ralph A. Dunham,** Atty. Gen., and **E. D. Barron, Phil W. Saunders,** Asst. Attys. Gen., for Respondent.

LEEDOM, J.   In November 1950 the appellant in this proceeding was sentenced to life imprisonment on his plea of guilty in the circuit court of Brookings county to the charge of murder.   In July 1952 he sought release from the state penitentiary by applying to the circuit court of Minnehaha county for a writ of habeas corpus.   He stated in his application that at the time his life sentence was imposed he had been denied the right guaranteed by both the constitutions of the Unted States and of South Dakota to have the assistance of a competent lawyer and as a result thereof had not been advised of other constitutional rights guaranteed to persons charged with crime including the right to a jury trial and to have witnesses subpoenaed in his own behalf; he also alleged that he never intelligently or competently waived or surrendered such rights, that he was therefore denied due process of law, and that the circuit court of Brookings county was therefore wholly without power, authority or jurisdiction to enter the judgment imposing the sentence.   The writ was issued and heard.   The circuit court of Minnehaha county after hearing applicant's proof on all his claims denied his application in all respects and quashed the writ.   We affirm the action of the circuit court.

■ ■   The right of one accused of crime to have the aid of counsel is guaranteed by the fourteenth amendment to the constitution of the United States and by Article VI, § 7, of the constitution of the State of South Dakota.   One deprived of his liberty through violation of this right may make a collateral attack by writ of habeas corpus on the judgment imposing the prison sentence.   Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357.   The right to counsel is one of historical importance typically American and persistently adopted by the framers of the constitutions of the original colonies to correct a recognized deficiency in the common law of England as it then existed.   Courts carefully protect the right and will not condone a perfunctory

compliance through which an accused defendant is given the appearance of the help of a lawyer but is actually denied substantial aid. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; and see State ex rel. Henning v. Jameson, 71 S.D. 144, 22 N.W.2d 731. The dignity attributed to the person in our form of government that makes man dominant over the state, and from which principle inevitably flows the presumption of innocence when the individual is charged with a violation of the rules of conduct imposed by the state, requires that each person charged with a law violation not be denied the assistance necessary to properly present his side of the case. And a lawyer whether paid or not, whether unsympathetic and unbelieving in his client's case or not, whether the offense alleged is abhorrent or in high disfavor with the current public view or not, is bound by the ethics of his profession and our judicial system to present the cause of the deserving and the despicable defendant with equal zeal. Only thus can this right, written into our constitutions, be made a reality. Any other system would deny justice in a court of law and relegate judicial determination to mob rule or to the views of the lawyer whose function it is to honorably present his client's cause but not decide his guilt.

As stated however in Hudspeth v. McDonald, 10 Cir., 120 F.2d 962, 968, "There is a vast difference between lacking the effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel. It is the denial of the right to have such assistance that gives the right to challenge a judgment of conviction by writ of habeas corpus." For an accused to question the capabilities of his lawyer following conviction, when the accused had the opportunity of obtaining counsel, is quite a different matter.

In the case at bar a duly licensed and practicing lawyer of Brookings, South Dakota, appeared with and for appellant at the time he was sentenced. The record reveals that in the preliminary part of the proceeding in which appellant entered his plea of guilty, he answered a question directed to him by the presiding judge as to whether the attorney present was appellant's attorney, and other questions, as follows:

"A. Yes, he is.

"Q. I assume that he has fully informed you of all your rights? A. Yes.

"Q. Your right to a trial by jury? A. Yes.

"Q. Your right to be confronted by the witnesses against you? A. Yes he has.

"Q. And to have witnesses subpoenaed in your own behalf. A. Yes.

"Q. You are thoroughly familiar with the nature of the offense with which you are charged, are you? A. Yes.

"Q. Charged with murder, and you know what the penalty for that offense is? A. Yes.

"Q. And are you ready to be arraigned at this time? A. [by the attorney] Yes, Your Honor."

Then following the reading of the information against appellant the judge continued to question and appellant answered as follows:

"Q. You have heard this Information? A. Yes.

"Q. Do you understand it thoroughly? A. Yes, I do.

"Q. And are you ready to enter your plea to it at this time—or do you want to enter your plea now? A. Yes.

"Q. And what is your plea—guilty or not guilty? A. Guilty."

The record reveals further that the state's attorney then advised the court fully concerning the facts of the case by reading a long supplemental statement signed by appellant setting forth in great detail circumstances of the death on which the murder charge was based. The judge then inquired of appellant's attorney and appellant separately if they were ready for pronouncement of judgment and both answered in the affirmative. Appellant on inquiry from the judge said that he had no statement to make and to the court's question, with reference to the confession, "Is that exactly as you want the Court to understand the facts to be?" answered "Yes"; and to the question, "Those are the true facts?" appellant gave the answer, "Yes, they are the true facts". The court then imposed the sentence.

The record also discloses that appellant had the means of employing a lawyer, that the lawyer who appeared for him had previously represented him in civil matters, that appellant and the attorney had conferred several times between the arrest and the judgment and that the attorney appeared not as a court appointed attorney but by appellant's own arrangement; also that appellant had previous court experience in criminal matters; and that after his arrest he had been visited by various relatives. There is no indication that appellant was or is under any disability such as illiteracy, or inferior mental capacity except as might be inferred from a tendency toward crime. He was 50 years of age when the judgment was entered.

Judging from the record here set out it would be hard to conceive how a court passing judgment could deal more fairly with a defendant or more considerately with the rights of one accused of crime. It is only in the light of contentions made later by appellant in the habeas corpus proceeding that his case acquires any appearance of merit. These contentions are: (1) that the attorney who appeared for appellant at the time of sentence was selected only as a last resort and after the sheriff had falsely advised appellant that five other attorneys had declined to take the case; (2) that the lawyer who did appear was wholly inexperienced and incapable in criminal defenses and never investigated the facts or advised appellant of his rights; (3) that the sheriff coerced appellant into pleading guilty by falsely representing to him that a mob threatened violence and might get out of control in event of delay; and (4) that appellant was so emotionally and nervously disturbed and exhausted that he did not really comprehend what was happening when the court entered the judgment of conviction and imposed the penalty.

The return made in behalf of the warden showed his right to custody over appellant by virtue of the judgment entered in Brookings county. It made out a prima facie case in his favor and placed on appellant the burden of proving the illegality of his restraint, that is the burden of proving his allegations that he had been denied substantial aid of counsel and due process of law. 39 C.J.S., Habeas Corpus, § 100 and cases cited note 66, page 668. Where, as in this

case, a defendant seeks not to supply an omission in or establish an inconsistency with the original record but to directly contradict it, this burden is heavy. Centers v. Sanford, 5 Cir., 120 F.2d 217. According to the findings of the circuit court appellant failed to carry the burden; and the record amply supports the findings that appellant was fairly and competently represented by counsel and was fully advised of all his rights.

In addition to other questions raised, appellant assigns as error the failure of the trial court to adopt appellant's proposed findings of fact and conclusions of law, and also the failure to enter any findings and conclusions. What we have said disposes of the contention as to the findings and conclusions proposed by appellant. They of course supported appellant's position as to the facts and were rejected by the trial court because they were not supported by the evidence. Such action, as we have indicated, is warranted under the record. Neither is there merit to the assignment of error predicated on the failure of the circuit court to make separate findings of fact and conclusions of law prior to entry of the order quashing the writ. Without deciding that findings of fact and conclusions of law are required in a habeas corpus proceeding we are of the opinion that the recitals contained within the order quashing the writ are findings of fact and amply support the conclusion contained within the order that the appellant should be remanded to the custody of the warden of the penitentiary.

The order from which the appeal is taken is affirmed.

All the Judges concur.