**UNITED STATES of America, Appellee,**

v.

**Dennis Joseph DELANEY, Appellant.**

**No. 83–1541.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1983.

Decided April 23, 1984.

**640**

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., Robert A. Mandel, Asst. U.S. Atty., Pierre, S.D., for appellee.

Charles Rick Johnson, Johnson, Eklund & Davis, Gregory, S.D., for appellant.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

BRIGHT, Circuit Judge.

Dennis J. Delaney appeals from his convictions for knowingly making a false statement in acquiring a firearm and for receipt of a firearm by a convicted felon. For reversal, Delaney argues that the district court erred (1) in denying his motion for a new trial, (2) in excluding evidence that indicated he had been pardoned of a prior felony conviction, and (3) in denying his motion to suppress the pistol that was the basis for the receipt of firearms charges. We affirm the district court's denial of the motion to suppress the pistol, but conclude that the court erred in failing to grant Delaney a new trial and in excluding evidence indicating a pardon of the prior felony conviction. Accordingly, we reverse and remand this case for a new trial and for proceedings consistent with this opinion.

I. *Background.*

On December 30, 1980, Dennis Delaney applied to purchase a Bersa pistol at the Red Owl Family Center in Pierre, South Dakota. One application form, United States Bureau of Alcohol, Tobacco, and Firearms Form 4473, directed Delaney to state whether he had been convicted of a crime punishable by imprisonment for a term exceeding one year. Delaney responded to the question by writing "no." In accordance with normal procedures, the Red Owl retained Form 4473 for its files and sent other forms Delaney completed to the sheriff's office for verification. After receiving no word of disapproval from the sheriff's office, the Red Owl delivered the Bersa pistol to Delaney on January 5, 1981.

Contrary to his representation on the application to purchase the Bersa pistol, Delaney did indeed have a felony record. In December 1979, Delaney had pled guilty in Spirit Lake, Iowa to a charge of receiving

stolen property, a crime punishable by imprisonment for a term not exceeding five years and a fine no greater than $500. He received a five-year suspended sentence and was placed on probation for two years.

Delaney's status as a convicted felon came to the attention of the Pierre Police Department in August of 1981, when Penny Anderson, who was then living with Delaney, reported a disturbance at her home. After arriving at Anderson's home and investigating the complaint, the police took custody of the Bersa pistol Delaney had purchased in December 1980. After further investigation, the police also learned of Delaney's felony record in Iowa, and, for this reason, refused to return the Bersa pistol to him.

Despite the police department's refusal to return his Bersa pistol, Delaney nevertheless regained custody of the pistol in August 1982. The police department had arranged for Old World Arms, a local gun dealer, to sell the pistol and, after retaining a fee for its services, remit the proceeds of the sale to Delaney. Delaney subsequently informed Old World Arms that he had sold the pistol to one Monty McBride. Delaney paid Old World Arms the agreed upon brokerage fee, and Old World Arms delivered the pistol to McBride. Several weeks later, on August 11, 1982, McBride gave the pistol to Delaney.

On November 19, 1982, Delaney was indicted on federal charges relating to his purchase and receipt of the Bersa pistol.[1] Count I charged him with knowingly making a false statement in acquiring the firearm in violation of 18 U.S.C. § 922(a)(6), and counts II and III charged him with receipt of the firearm by a convicted felon in violation of 18 U.S.C. § 922(h)(1).[2] A

jury convicted Delaney on these counts, and the court sentenced him to three concurrent terms of two years' imprisonment.

II. *Discussion.*

A. *Jury Misconduct.*

Delaney contends that the district court abused its discretion in denying his motion for a mistrial because misconduct by the jury foreman deprived him of a fair trial. We turn to this issue.

On the last day of testimony, February 25, 1983, the trial judge was informed that during the trial the foreman of the jury, Douglas Morgan, had asked an officer at the Pierre Police Department about probation procedures. While the jury was deliberating, the court conducted a hearing to determine the nature of Morgan's inquiry. The record discloses that on the morning of the last day of trial, Morgan appeared at the front desk of the police department and asked Officer Hemmelman whether "a parolee is advised of the condition of his parole when he is placed on parole by his parole agent." Officer Hemmelman testified that he replied, "[A]s far as I know they were. In fact, that in cases I was aware of they were given a copy of the parole agreement."

Arguing that this conversation might impermissibly affect the jury's verdict, Delaney moved for a mistrial. The court did not at that time rule on the motion.

After the jury returned its verdict, the court and Delaney's counsel questioned Morgan about his conversation with Officer Hemmelman. Morgan testified that he made the inquiry at the police department because

---

**1.** Delaney was also indicted on several counts arising from his receipt and possession of a .243 caliber Winchester rifle. Count IV charged Delaney with receipt of the rifle by a convicted felon, 18 U.S.C. § 922(h)(1), and count V charged him with being a felon in possession of the rifle, 18 U.S.C.App. § 1202(a)(1). In addition, count VI charged Delaney with obstruction of justice by influencing a witness, 18 U.S.C. § 1503, and count VII charged him with subornation of perjury, 18 U.S.C. § 1622. As Delaney

was acquitted on counts IV–VII, only the counts relating to the purchase and receipt of the .22 caliber Bersa pistol are the subject of this appeal.

**2.** Count II charged Delaney with receiving the pistol from the Red Owl Store on January 5, 1981, and count III charged him with receiving the pistol from Monty McBride on August 11, 1982.

I got to thinking about [sic] Mr. Delaney had been on probation. So I thought I would go to the Police Station and ask them if he was ever put on probation, if he was read the charge and the rights and stuff * * *.

Morgan also testified that Officer Hemmelman "wasn't sure" if a probationer was aware of the conditions of his probation, and stated that he did not discuss his conversation with Officer Hemmelman with the other jurors. Delaney renewed his motion for mistrial, which the court denied.

On April 20, 1983, eight days after entry of judgment and sentencing, Delaney filed a notice of appeal and moved pursuant to Fed.R.Crim.P. 33 for a new trial. In an order dated May 23, 1983, the court denied the new trial motion. On May 26, 1983, after obtaining affidavits from two jurors who attested that Morgan had communicated the substance of his conversation with Officer Hemmelman to the jury, Delaney moved again for a new trial based on newly discovered evidence. On June 28, 1983, this court remanded the case to the district court to consider the newly discovered evidence and to rule on Delaney's May 26, 1983 motion for a new trial. On remand, the court again denied the new trial motion, finding (1) that Morgan's inquiry of Officer Hemmelman "produced nothing but an equivocal answer which did not influence the result of the trial," and (2) that "none of the affidavits recite that juror Morgan communicated to the other jurors any information that he might have received."

■■■ It has long been settled that a jury in a criminal case must reach a verdict based upon evidence presented at trial. *See Turner v. Louisiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). Accordingly, any communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial. *Remmer v. United States*, 347 U.S. 227, 229, (1954); *United States v. Sublet*, 644 F.2d 737, 740 (8th Cir.1981); *see also, United States v. Hillard*, 701 F.2d 1052, 1064 (2d Cir.) (extrarecord information that comes to jury's attention presumptively prejudicial; juror informed other jurors of background of lawyers and custodial status of defendants), *cert. denied,* —— U.S. ——, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983). This presumption of prejudice is not conclusive, but "the burden rests heavily upon the Government to establish * * * that such contact with the juror was harmless to the defendant." *Remmer v. United States, supra,* 347 U.S. at 229, 74 S.Ct. at 451. *See also United States ex rel. Owen v. McMann*, 435 F.2d 813, 818 (2d Cir.1970) ("touchstone of decision" in case involving extra-record evidence is "not the mere fact of infiltration of some molecules of extra-record matter, * * * but the nature of what had been infiltrated and the probability of prejudice").

■■■ Although the trial court has substantial discretion in determining whether an improper contact with a juror has caused prejudice to the defendant, *see United States v. Sublet, supra,* 644 F.2d at 741; *United States v. Doe*, 513 F.2d 709, 712 (1st Cir.1975), the misconduct here would prejudice Delaney's right to a fair trial. The information Officer Hemmelman passed along to Morgan concerned the primary factual issue before the jury on count I, which was whether Delaney "knowingly" made a false statement when he stated on his application for a firearm that he had never been convicted of a crime punishable by imprisonment for a term exceeding one year.[3] At trial, Delaney testified that he thought his criminal record had been

---

3. Count I charged a violation of 18 U.S.C. § 922(a)(6), which provides in part that it shall be unlawful

(6) for any person in connection with the acquisition or attempted acquisition of any firearm * * * from a * * * licensed dealer

knowingly to make any false or fictitious * * * statement * * * likely to deceive such * * * dealer * * * with respect to any fact material to the lawfulness of the sale or other disposition of such firearm * * *.

"wiped clean" when he completed his probation, and thus did not misrepresent his criminal record "knowingly."[4] Officer Hemmelman's statements, however, could have given Morgan reason to doubt Delaney's testimony. Hemmelman told Morgan that parolees generally know of the terms and conditions of their parole. Morgan may plausibly have inferred from this statement that as a person on probation,[5] Delaney was aware of the terms and conditions of his probation, including his continuing status as a felon. As such an inference would be contrary to Delaney's defense, the prejudice in Officer Hemmelman's statement is apparent. Indeed, the potential influence of this statement upon the jury's deliberations was particularly strong because Morgan served as foreman of the jury. Accordingly, we conclude that the district court abused its discretion in denying Delaney's motion for a mistrial.

█ In reaching this conclusion, it is unnecessary to rely on post-trial affidavits of two other jurors stating that Morgan

strongly argued to the jury that convicted felons such as Delaney are fully informed of their criminal record when they are placed on probation.[6] Rather, we believe that the communication of the extra-record information to Morgan alone was sufficient to deprive Delaney of his right to a fair trial. As the court noted in *Stone v. United States*, 113 F.2d 70 (6th Cir.1940), "If a single juror is improperly influenced, the verdict is as unfair as if all were." *Id.* at 77. *See also United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).

█ The Government contends that the extra-record evidence, even if prejudicial as to count I, was not prejudicial as to counts II and III. Counts II and III charged Delaney with receipt of a firearm by a felon and, as the Government points out, knowledge of one's status as a felon is not an element of this offense. *See* 18 U.S.C. § 922(h).[7] Nevertheless, the information

---

**4.** In support of this position, Delaney testified that after he moved to South Dakota, his former employer informed him that he had received some correspondence from the Iowa court indicating that Delaney's probation period had passed and that his "slate was wiped clean." In addition, Delaney stated that when he purchased the pistol at the Red Owl Store, he informed an employee that he had been charged with a crime in Iowa, but believed that it had been taken off his record. Further, he testified that he thought that the sheriff would deny his application to purchase a pistol if there were a problem with his record.

**5.** Although Morgan asked Officer Hemmelman about parole procedures, he apparently meant probation procedures. Delaney had been placed on probation after his felony conviction in Spirit Lake, Iowa, and Morgan testified that he spoke to Officer Hemmelman because he wondered whether a person on probation knew of the terms and conditions of his probation. It appears from the record that Morgan simply misspoke when he asked about parole procedures, and that he interpreted Officer Hemmelman's response to apply to probation procedures.

**6.** Although we need not rely on the jurors' affidavits in concluding that the extra-record communication was prejudicial, we believe that the affidavits may be used to impeach the verdict.

Juror Floyd Reynolds stated in his affidavit that Morgan

> took an active part in arguing that probationers are given full information by the authorities whenever he or she is placed on probation, including copies of all formal records showing the status of conviction.

Similarly, Juror Sandra Mitchell attested that Morgan

> did advocate strongly the position that probationers were in fact fully informed of such status of conviction whenever he or she was placed on probation as a routine matter; and parolees or probationers would therefore know exactly what the status of his or her conviction would be.

These affidavits, though inadmissible to show how Morgan's statements about probationers actually influenced the jury's deliberations, constitute competent evidence that Morgan obtained prejudicial information and communicated it to the other jurors. *See* Fed.R.Evid. 606(b); *see also United States v. Eagle*, 539 F.2d 1166, 1169–70 (8th Cir.1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977); *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 149–50 (3d Cir.1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976).

**7.** 18 U.S.C. § 922(h) provides in part:

> It shall be unlawful for any person—
> (1) * * * who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

Officer Hemmelman communicated to Morgan, though perhaps not relevant to any element of the offense charged in counts II and III, would likely taint the jury's deliberations on every count. In essence, Morgan received information that not only questioned Delaney's contention that he had been unaware of his felony record, but also challenged his general credibility and character. Thus, we hold that the impermissible out-of-court communication between Officer Hemmelman and Morgan prejudiced Delaney's right to a fair trial on all counts of the indictment.

### B. *Exclusion of Delaney's "Rap Sheet."*

■ Delaney also contends that the district court abused its discretion in excluding his "rap sheet" from evidence. After he was charged under the present indictment, Delaney obtained his "rap sheet" from the South Dakota Division of Criminal Investigation. The "rap sheet" contained a notation indicating that he had been pardoned of his 1977 conviction for receiving stolen property, although in fact he had never received such a pardon. Delaney unsuccessfully sought to introduce the "rap sheet" to corroborate his contention that when he purchased the pistol, he was unaware of his status as a felon.

Although evidence of a pardon first came to Delaney's attention almost two years after he purchased the Bersa pistol, such evidence lends credence to his contention that he did not "knowingly" misrepresent his criminal record. Delaney's principal defense was that he believed he no longer had a criminal record when he applied for the pistol. He testified that when he pled guilty to the 1977 felony, he understood that he would have no criminal record when he completed his probation. He further stated that this belief was confirmed

when he learned from his former employer that the Iowa court had sent correspondence indicating that his probation had passed and his "slate was wiped clean." Thus, the existence of an official record indicating that Delaney had been pardoned adds credibility to his contention that in believing he had no felony record, he relied, albeit mistakenly, on information he received from his former employer and possibly from court officials. Although we would not reverse on this ground, we believe that evidence of the pardon is more probative than prejudicial, and that the court should have admitted Delaney's "rap sheet" into evidence.[8]

### C. *Motion to Suppress.*

Delaney finally contends that the district court erred in denying his motion to suppress evidence of the Bersa pistol. We reject this contention.

The Pierre Police Department obtained the Bersa pistol while responding to Penny Anderson's report of a disturbance at her home. When Officer Sutton arrived to investigate the complaint, he encountered Delaney standing outside Anderson's home. After briefly speaking with Delaney, Officer Sutton proceeded to the door where he met Anderson and Delaney's brother-in-law. At their invitation, he went inside and observed damage to the house and furniture. He also noticed two .22 caliber pistols lying on the dining room table. After some discussion, Anderson signed a citizen's arrest charging Delaney with breaking and entering, intentional damage to property, and assault.[9] At that time Anderson also turned the pistols over to Officer Sutton.

As noted, one of the pistols removed from Anderson's home formed the basis for counts II and III of the indictment, which charged Delaney with receipt of a

---

* * * * * *
to receive any firearm * * * which has been shipped or transported in interstate or foreign commerce.

**8.** Should Delaney offer the "rap sheet" in evidence on retrial, the Government, of course,

may present evidence that the erroneous information on the "rap sheet" could not have been communicated to Delaney's alleged sources who advised him, that his record had been cleared.

**9.** The state never prosecuted Delaney on these charges.

firearm by a felon. Prior to trial, Delaney moved to suppress evidence of the pistol on the ground that it was seized without a warrant and in violation of his fourth amendment rights. The district court denied the motion to suppress, finding that Anderson voluntarily consented to the seizure of the pistols.

 Delaney does not challenge Anderson's authority to consent to the seizure of the pistols. *See United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Rather, he contends that the district court's finding that Anderson voluntarily consented to the seizure was clearly erroneous. We disagree. When Officer Sutton discovered the pistols, he was legitimately on the premises responding to Anderson's report of a disturbance. Officer Sutton testified that Anderson reported to him that Delaney had been brandishing the pistols about, and she signed a citizen's arrest charging Delaney with assault. In addition, Officer Sutton testified that when he told Anderson that he was going to take the pistols as evidence of the assault, she willingly let him have them. Although Anderson testified that her consent was not voluntary, the district court determined that Officer Sutton's version of events was the more credible, and substantial evidence exists to support that conclusion. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States v. Weeks*, 645 F.2d 658, 659 (8th Cir.1981). Accordingly, we affirm the district court's denial of Delaney's motion to suppress.[10]

### III. *Conclusion.*

Accordingly, we affirm the district court's denial of the motion to suppress evidence of the pistol, but reverse and remand this case for a new trial for the reasons set forth herein.

---

10. The pistols also were admissible under the "plain view" exception to the warrant requirement. Officer Sutton was lawfully present in Anderson's home when he inadvertently discovered the pistols, and he testified that he seized them as evidence of the assault. *See United States v. Boyer*, 574 F.2d 951, 954–55 (8th Cir.), *cert. denied*, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978); *United States v. Thomas*, 676 F.2d 239, 243 (7th Cir.1980), *cert. denied*, 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981). Although the district court did not explicitly find that the pistols were evidence of the assault, it did accept Officer Sutton's testimony as credible.