**Lloyd John BUCHHOLZ, Petitioner and Appellant,**

v.

**STATE of South Dakota, Appellee.**

**No. 14554.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1984.

Decided April 24, 1985.

Scott C. Petersen of McFarland, Petersen & Nicholson, Sioux Falls, for petitioner and appellant.

Douglas E. Kludt, Asst. Atty. Gen., Pierre, for appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

KEAN, Circuit Judge.

This is an appeal from an order denying appellant's request for relief from a conviction and judgment. We affirm.

Appellant was charged with three crimes: Count I—attempted theft by threat, SDCL 22–30A–4; Count II—commission of a felony while armed with a firearm, SDCL 22–14–3; and, Count III—aggravated assault, SDCL 22–18–1.1(5). A trial by jury resulted in a conviction on all the offenses. Appellant was sentenced to three years' imprisonment on Count I and six years on Count III. These sentences were to be served concurrently. On Count II he was sentenced to eight years' imprisonment to be served consecutive to the other sentences. The appeal that was taken was never completed and later dismissed.

On June 23, 1983, appellant signed a petition for post-conviction relief. SDCL ch. 23A–34. Appellant alleged that the jury was not impartial and received extraneous prejudicial information which violated his constitutional rights. The petition was supported by an affidavit of juror Mary Jane Boyd and was signed on June 23, 1983.

The petition was not filed until July 5, 1983. On July 1, 1983, 1983 S.D.Sess. Laws, ch. 169, § 15 became effective and repealed SDCL ch. 23A–34. Technically, appellant's request for relief was filed under a statute which no longer existed. However, 1983 S.D.Sess.Laws, ch. 169, §§ 1–14 added certain provisions to SDCL ch. 21–27, habeas corpus, which substan-

tively and procedurally correspond to the former statutes for post-conviction relief. This court has recognized that certain constitutional rights, such as those raised in this proceeding, are the proper subject of habeas corpus. *See State ex rel. Parker v. Jameson*, 75 S.D. 196, 61 N.W.2d 832 (1953). All the procedural steps required by SDCL ch. 21–27 were followed in this case except that the proceedings progressed under the title of "Post Conviction Proceedings." Therefore, it makes neither legal nor practical sense to dismiss this appeal solely for this reason. Appellant could merely refile the same documents with new headings. Time would be wasted by all parties. Thus, for the purposes of this appeal, and without intending any precedent for future cases, this court shall deem these proceedings to have been started under and determined by SDCL ch. 21–27.

At the hearing on appellant's petition, all of the jurors who deliberated at appellant's trial testified. This story of the deliberations evolved. The case was given to the jury in mid-afternoon on the second day of the trial. By the time the jury broke for dinner, the jurors had arrived at verdicts of guilty on Counts I and II. Problems arose over Count III. At dinner time the vote was nine to three for a verdict of guilty.

The jurors were properly escorted by the bailiffs to dinner. Upon their return one of the jurors told juror Terry Beeson to tell the other jurors what he, Beeson, had told him during dinner. Beeson related that he had known appellant for some time. Beeson could not understand why he had been left on the jury. (Trial counsel knew this from voir dire.) He also said that appellant was in and out of trouble and was "bad news."

Of all the jurors to testify, only Boyd claims the remark influenced her decision on Count III. Seven of the jurors do not remember any remark made by Beeson. Two jurors remember Beeson making a comment about appellant being in trouble before. One juror recalled Beeson stating he could not understand why he had been left on the jury. Except for Boyd, the jurors who heard the remark claim the

remark had no influence upon their verdict of guilty on Count III. Beeson claimed his prior knowledge of appellant did not influence his verdict of guilty on any of the charges.

Appellant does not claim, and there is no testimony that Beeson mentioned any specific prior conduct of appellant, or a prior conviction, or any fact about the charges for which he was on trial. Beeson's remarks appear to have been brought up on just one occasion. The remarks were not discussed again while the jury deliberated to reach its conclusion on Count III. A verdict of guilty was reached on Count III. When the jury was polled, all jurors without exception indicated it was his or her verdict on each count.

## THE VERDICT ON COUNTS I AND II

The trial judge found as a fact

7. According to the testimony of the jurors, it was unanimously established that the Defendant was guilty as to Counts I and II prior to any statement by Mr. Beeson,

and concluded as a matter of law

2. There was no evidence submitted which persuaded or convinced this Court or even indicates that the comment of Mr. Beeson was made prior to the unanimous findings of guilty beyond a reasonable doubt as to Counts I and II by the jury.

█ We agree with the finding and conclusion of the trial court. While appellant made general allegations about violations of his constitutional rights on all three convictions, the record is devoid of any error as to Counts I and II. The record is very clear that the convictions on Counts I and II were reached before any remarks by Beeson. Even Boyd agrees on this point. There is no reason to consider the clearly erroneous rule since no error can be found. Appellant's convictions on Counts I and II will not be disturbed because the verdict was based only upon the evidence produced at trial. *State v. Williamson*, 349 N.W.2d 645 (S.D.1984); *Brown Co. v. Meidinger*, 271 N.W.2d 15 (S.D.1978). *Cf. United*

*States v. Delaney*, 732 F.2d 639 (8th Cir. 1984).

## THE VERDICT ON COUNT III

As a rule of jurisprudence it is often stated that a juror may not impeach his own verdict once the jury has been discharged. *State v. Gallegos*, 316 N.W.2d 634 (S.D.1982); *State v. Larkin*, 87 S.D. 61, 202 N.W.2d 862 (1972). The purpose of this rule is: (1) to discourage harrassment of jurors by the losing party anxious to have the verdict set aside; (2) to encourage open discussion of the facts among the jurors; (3) to reduce incentives for jury tampering; (4) to promote finality to cases; (5) to maintain the viability of the jury as a judicial decision making body. *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Miller v. United States*, 403 F.2d 77 (2d Cir.1968).

Contrasting with this rule is the right of a litigant to a jury which decides his case in a fair and impartial manner. To accommodate these two precepts, evidence from a juror is allowed only when offered to show matters which inhere in the verdict itself. *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245 (3rd Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971).

The rule and exception are found at SDCL 19–14–7 (Rule 606(b)):

[U]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

The first clause of the first sentence of SDCL 19–14–7 generally prohibits testimony by a juror concerning any statements or discussions taking place during the course of jury deliberations. The second clause excepts only extraneous prejudicial information or outside influences. Thus, a juror may testify to any fact bearing upon the question of the existence of any extraneous influence, but not as to how far that influence operated upon his mind.

Rule 606(b) seeks to reach an accommodation between policies designed to safeguard the institution of trial by jury and policies designed to insure a just result in the individual case. It does so by drawing the dividing line between inquiry into the thought processes of the jurors on the one hand, and inquiry into the existence of conditions or the occurrence of events calculated to exert an improper influence on the verdict, on the other. 3 J. Weinstein & M. Berger, *Evidence* § 606–23 (1981).

An extraneous influence covers a multitude of situations. It covers publicity received and discussed in the jury room, consideration by the jury of evidence not admitted in court, and contacts between jurors and non-jurors. *Id.* at §§ 606–29–606–32. By contrast, evidence of jury discussions, intimidation or harassment of one juror by another, or other intra-jury influence are not extraneous and, thus, may not be used to impeach a verdict. *See State v. Finney*, 337 N.W.2d 167 (S.D.1983) (racial prejudice).

The issue presented by appellant clearly points out the problems involved in a case of this nature. Any attempt to set aside a verdict faces two distinct problems: (1) producing evidence competent to attack the verdict, and (2) establishing the existence of a recognized ground to overturn the jury's verdict. In addition, there still must be a finding that the party seeking to set aside the verdict has been prejudiced by the misconduct.

Jury misconduct about which a juror may testify and misconduct which furnishes a basis for overturning a verdict overlap

a great deal. The concepts are often used interchangeably, adding to the difficulty of developing a precise list of reasons for setting aside a verdict. *See* Comment, *Impeachment of Jury Verdicts*, 25 U.Chi.L. Rev. 360 (1958). There are, however, some common patterns which have been held adequate to set aside a verdict excepting juror incompetence. These patterns of extraneous influences are: (1) communications between third parties and jurors on matters pertinent to the trial, *see, e.g., Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966) (Bailiff expressed his opinion on case to jurors); (2) exposure of jury to news items about trial, *see, e.g., Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); (3) consideration by jury of facts not on the record, *see, e.g., United States ex rel. Owen v. McMann*, 435 F.2d 813 (2d Cir.1970); (4) pressure or partiality on part of the court, *see, e.g., Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). *See generally*, 3 J. Weinstein & M. Berger at § 606–04.

It is (3), consideration by the jury of extra-judicial facts, which is of concern in this appeal. This category, however, is by no means clearly defined.

> The question of when a juror is resorting to knowledge obtained outside the record also presents difficulties. Jurors are expected to bring commonly known facts to bear in assessing the facts presented for their consideration, but the boundary between commonly known facts and specialized knowledge which jurors are not supposed to use and personal knowledge which jurors ought not to have is often vague.... In a criminal case, however, resort by a juror to anything other than common knowledge or record facts might be held to violate the right to information recognized in *Parker v. Gladden*.

3 J. Weinstein & M. Berger, at §§ 606–35, 606–36.

The difficulty noted above is well illustrated in *United States ex rel. Owen v. McMann, supra*. The defendant, convicted in state court, filed an application for federal habeas corpus alleging that three jurors

considered extra-record statements about him. At the close of the evidentiary hearing, the district judge found:

> In substance, the jurors or some of them were told by other jurors during the trial and the deliberations: that the defendant had been in trouble all his life; that he had been suspended from the police force in connection with the unauthorized use of a prowl car; that he had been involved in a fight in a tavern; that one of the juror's husband was an investigator and that he knew all about plaintiff's background and character, which was bad; and that petitioner's father was always getting him out of trouble.

*Id.* at 815.

The Court of Appeals affirmed by explaining:

> The invocation of the confrontation clause in *Parker* was entirely appropriate to shield the defendant from comments to the jury by one whose statements, if admissible at all, could have properly been received only from the witness stand, subject to the procedural safeguards which the Sixth Amendment requires. But, so far as we know, the Court has never suggested that jurors, whose duty it is to consider and discuss the factual material properly before them, become "unsworn witnesses" within the scope of the confrontation clause simply because they have considered any factual matters going beyond those of record. To resort to the metaphor that the moment a juror passes a fraction of an inch beyond the record evidence, he becomes "an unsworn witness" is to ignore centuries of history and assume an answer rather than to provide the basis for one.... [W]e suspect there are many cases where jurors make statements concerning the general credibility or incredibility of the police, the need of backing them up even when there is reasonable doubt of guilt or putting brakes upon them even when there is none, the desirability of overcoming reasonable doubt because of the repugnance of particular crimes or of yielding to less than reasonable doubt because of their insig-

nificance, and concerning other matters that would invalidate a judgment if uttered by a judge, *see id.* at 131–32. Yet this is the very stuff of the jury system, and we have recognized, in a not unrelated context, that the standards for judges and juries are not the same, *United States v. Maybury,* 274 F.2d 899, 902–903 (2 Cir.1960). *The touchstone of decision in a case such as we have here is thus not the mere fact of infiltration of some molecules of extra-record matter, with the supposed consequences that the infiltrator becomes a "witness" and the confrontation clause automatically applies, but the nature of what has been infiltrated and the probability of prejudice....* (emphasis added)

*Id.* at 817–818.

■ With this in mind, we can conclude then that the comments made in this case which came to the attention of several jurors were presumptively prejudicial. *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *United States v. Hillard,* 701 F.2d 1052, 1064 (2d Cir.1983).

■ Although the remarks were presumptively prejudicial, such presumption may be rebutted by showing the information was harmless in view of all the evidence of guilt, *Sher v. Stoughton,* 666 F.2d 791, 793 (2d Cir.1981); or by determining there was no significant possibility that the defendant was prejudiced, *United States v. McKinney,* 429 F.2d 1019 (5th Cir.1970), *cert. denied,* 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971); or by showing that the nature of the extra-record evidence could not have had or had a minimal effect upon the jury, *United States ex rel. Owen v. McMann, supra.* Moreover, in determining what effect the extraneous influence had upon a juror, the court must apply an objective test, assessing for itself the likelihood that the influence would have upon a typical juror. *United States v. Greer,* 620 F.2d 1383, 1385 (10th Cir.1980). This standard precludes a court from investigating

the subjective effect of extrinsic material upon a juror. *United States v. Bagnariol,* 665 F.2d 877, 884–885 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Jurors may be questioned that the extrinsic evidence had no effect upon them. *Port Terminal & Warehousing Co. v. John S. James Co.,* 92 F.R.D. 100, 109 (S.D.Ga.1981), *aff'd* 695 F.2d 1328 (11th Cir.1983).

Turning our attention to the facts from the evidentiary hearing, it is apparent that no error was committed by the trial judge in denying appellant's request for relief. Two of the comments made by juror Beeson had no reasonable bearing upon the verdict. These comments were that he had known appellant most of his life and that he could not understand why he had been left upon the jury.*

■ Two general comments were made about appellant's background. One was that he was "bad news." The second was that "he's been in trouble all his life." All the jurors who heard the comments except Boyd stated that these comments had no bearing upon their verdict. Boyd testified that no specifics about appellant's background were mentioned and that these comments by Beeson were mentioned only once and were not further discussed by the jurors. Further, the testimony of juror Boyd actually transgressed into some forbidden areas. Her testimony about feeling pressured and the discussion about "people who use firearms should be off the street" falls within Rule 606(b) and should not have been allowed. *State v. Finney* at 169.

■ No reasonable juror would have been influenced by the phrase "bad news." It is vague and cryptic. It means nothing in particular and could mean many things in general. The other phrase, "he's been in trouble all his life," is also vague and is not specific. On this lack of specificity, the Court in *United States ex rel. Owen v. McMann, supra,* said:

> knowledge of appellant would affect his ability to sit as a fair juror. Better questioning might have prevented this appeal.

---

* That Beeson knew the appellant was ascertained during voir dire. Trial counsel apparently never inquired further as to whether Beeson's

Owen's case falls on the impermissible side of this by no means bright line, although perhaps not by much. On the basis of the judge's findings, the jurors' statements went beyond Owen's being something of a ne'er-do-well; they included allegations of at least two specific incidents which had not been and probably could not have been received in evidence, and which Owen had had no opportunity to refute.

*Id.* at 818–19.

■■■ Unlike the situation in *Owen*, there were no extra-record facts brought into the jury room by Beeson. While there were two brief general comments made by him, these comments do not rise to a level of depriving appellant of his right to an impartial jury. These comments are not attributable nor linked to any specific misconduct in appellant's background as in the *Owen* decision. At best the comments place appellant well into the mainstream of ne'er-do-wells, but the comments are not the type which violate any of his rights.

■■■ The strength of the state's case should not be overlooked. The record indicates that appellant testified at trial and essentially gave testimony in complete conformity with the state's witnesses. There is no question that he committed the attempted theft by threat, (formerly extortion), and was armed with a firearm while doing so. The only dispute in the case arose in Count III as to one factual variance between his claim and the claim of two law enforcement officers—whether or not he had pointed the firearm at one of them. The fact appellant had a firearm, made a death threat, and, so to speak, "had the drop" on the officers is not at issue. With this testimony it is easy to understand why the jury convicted him on all three counts. No typical, reasonable or normal juror, with these facts at hand, would have been much influenced, or even cared about, Beeson's comments. In view of the totality of the case, little weight and no prejudice can be attributed to Beeson's comments.

We agree with the trial court's conclusion:

5. This Court concludes that Mrs. Boyd was in no way pressured and that her after thoughts [sic] and belated, vague, and inarticulable impressions do not outweigh her clear and affirmative answer to the Court's polling made by her under oath and at a time when the evidence was fresh in her mind.

The state has carried its burden. The order of the trial court denying appellant's request for relief is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., concurs in result.

KEAN, Circuit Judge, sitting for WUEST, Acting Justice, disqualified.

HENDERSON, Justice (concurring in result).

I concur in the result of this opinion thereby writing specially (a) to preserve the integrity of my dissent in *State v. Finney*, 337 N.W.2d 167, 172 (S.D.1983), and (b) to point out a great difference in this case and *Finney*.

Here, a full-blown evidentiary hearing was held and all jurors testified concerning the alleged improprieties in juror deliberation. In *Finney*, as reflected in my dissent at 172, no evidence was ever taken concerning the alleged improprieties of the jurors and a due process hearing was stonewalled. In *Finney*, I wanted the jury room opened up to light—to the taking of evidence. As the Supreme Court of Wisconsin in *After Hour Welding v. Laneil Management*, 108 Wis.2d 734, 737–39, 324 N.W.2d 686, 689–90 (1982), cited in my dissent in *Finney* and highlighted by Justice Wollman in his special concurrence therein, indicated:

While the rule against impeachment of a jury verdict is strong and necessary, it is not written in stone nor is it a door incapable of being opened. It competes with the desire and duty of the judicial system to avoid injustice and to redress the grievances of private litigants.

. . . .

The concern for fairness to the parties and monitoring the integrity of the judicial system leads us to conclude that a trial court may, in appropriate circumstances, consider allegations that extraneous prejudicial remarks were made to jurors which were not a part of the judicially guarded evidence they received. *Finney,* 337 N.W.2d at 170–71. Here, it was actually done (light did shine into the jury room) and findings of fact and conclusions of law were entered below by Judge Hertz consisting of four typewritten pages precisely pertaining to the jury's deliberation. Judge Hertz' ultimate Conclusion of Law 7 states: "The Petitioner's requested relief cannot be granted where it is not established that the extraneous information was such as to prejudice the minds of the jurors and thereby affect their verdict." Existing, obviously, was a weighing process by a trial judge of sworn statements by a jury as to the impact of extraneous information. The jury room, you see, was not closed behind an iron curtain. SDCL 19–14–7 is not an iron curtain. Were it so, bribery of jurors would never come to light, nor would threats to a jury on their life ever be exposed, nor would such an ugly thing as racial prejudice be ever brought to light. These are but a few examples. I longed for a due process hearing for Finney, as he whiled away his time at the State Penitentiary, that a due process hearing would be held to expose the horrendous deliberations in that case. My longing was of no avail. Federal Rule of Evidence 606(b), as codified by SDCL 19–14–7, permits a juror to testify on the question of "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." I reasoned in *Finney* that Finney's conviction should be reversed and remanded with instructions to the trial court that it take evidence as to the jury's verdict in the case "to determine if the verdict was discolored, tainted, and infused with improper jury influences." *Finney,* 337 N.W.2d at 175. I indicated:

> Contrary to Federal Rule of Evidence 606(b), the juror was never permitted to testify. No evidence was taken whatsoever. Thus, appellant was precluded from establishing a record. How will you ever expose the racial prejudice of a jury unless the door is opened to hear it? A due process hearing has been stonewalled.

*Finney,* 337 N.W.2d at 175 n. 4. My exhortation was for naught. I am gratified that appellant was here granted a due process hearing and his charges of extraneous prejudicial information and outside influence was thoroughly explored.

I note several references in the majority opinion to cases cited in my *Finney* dissent. I can hardly quarrel with those authorities. To me, they stood for light. However, that I am not boxed in by the application of those authorities to the facts at hand via the language of this opinion, I concur in the result. I do not wish to see Federal Rule of Evidence 606(b) nor SDCL 19–14–7 become an iron curtain. The exceptions in that rule are there for a good reason, and it is this fundamental concept: that cases be decided upon evidence presented in the courtroom.

Although the remarks of juror Beeson were presumptively prejudicial, this presumption was overcome by the sworn testimony of the jurors at the hearing before Judge Hertz. Perhaps Beeson's remarks were "molecules of extra-record matter," but their infiltration appears to be inconsequential and without ultimate prejudice. *United States ex rel. Owen v. McMann,* 435 F.2d 813, 818 (2nd Cir.1970).