2002 SD 81

**Kelli BUISKER, personal Representative of the Estate of Heidi Jo Aldentaler, Plaintiff and Appellant,**

v.

**Margaret THURINGER, Defendant and Appellee.**

No. 22059.

Supreme Court of South Dakota.

Considered on Briefs March 25, 2002.

Decided July 10, 2002.

H.I. King of Tonner, Tobin & King, Aberdeen, South Dakota, Philip W. Morgan, Britton, South Dakota, Attorneys for plaintiff and appellant.

Daniel R. Fritz, Aberdeen, South Dakota, Attorney for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] In this wrongful death action, we conclude that the trial court erred in refusing to instruct the jury on the gratuitous employee doctrine and erred in refusing to grant a new trial when extraneous information was conveyed to the jury by the bailiff's spouse. We reverse and remand for a new trial.

### A.

### Background

[¶ 2.] Margaret Thuringer owned an old house trailer that had been sitting unused on her property. Margaret's daughter, Delaine Aldentaler, had recently leased a lot on Buffalo Lake and agreed, at her mother's insistence, that the trailer should be moved onto the lakeside property for a family vacation cabin. Not wishing to pay a professional to disconnect the addition to the trailer, Margaret sought the help of Harley Hoisington, a handyman, who agreed to help family members with the project. Harley had often assisted Margaret with chores during her husband's last illness and after his death. He and his friend, Sandra Madsen, had helped

Margaret dismantle two log cabins on her property. Despite his having assisted Margaret in the past, Harley was reluctant to work on disconnecting the addition, and he agreed only after Margaret had asked him repeatedly to do so.

[¶ 3.] On the appointed day, Harley and Sandra arrived at Margaret's home and found Delaine and her daughter, Heidi Aldentaler, already there. After eating lunch together, all went to the site to begin work. None of those involved had any experience with uncoupling an addition the size and weight of the one here. It was not simply a matter of taking the addition itself apart, but of removing it as a unit to be reattached to the trailer when both had been moved to the lake.

[¶ 4.] As they removed some of the supports, Margaret sat by, observing and offering suggestions. According to her daughter, Delaine, Margaret was "supervising the removal." Margaret had been present when the addition was built, so she purportedly understood how it was fastened to the trailer. Suddenly, the addition came loose, Sandra gave a warning cry, and the structure rolled over on top of Heidi, crushing her skull and killing her instantly.

[¶ 5.] Heidi Aldentaler's Estate (plaintiff) brought a wrongful death action against Margaret Thuringer. At trial, there was conflicting testimony about Heidi's actions and her position just before the addition gave way. Sandra told a deputy sheriff who came to investigate that Heidi had braced herself to try to hold the addition in place. Later, Sandra testified that the deputy had misunderstood her and that it was Sandra herself who had attempted to hold the addition in place. The coroner testified that the position of Heidi's body was consistent with her having tried to keep it from rolling over.

[¶ 6.] During the trial, a trooper with the South Dakota Highway Patrol gave Dale Freeman, one of the jurors, a ride to the courthouse. The trooper was married to the bailiff on the trial, and during the ride, the trooper mentioned that Margaret had liability insurance and asserted that the purpose of the suit was to enforce a judgment against an insurance company. In jury deliberations, Freeman shared with his fellow jurors what he had heard from the trooper. In his later affidavit, Freeman explained that, after revealing the information from the trooper, most of the jurors "seemed to be of the impression that this put the family all in cahoots with each other, including [Margaret], so that they should receive nothing from us." The jury returned a verdict for defendant. Plaintiff's motion for a new trial was denied.

[¶ 7.] On appeal, plaintiff raises the following issues: (1) Did the trial court err in giving jury instructions on contributory negligence and assumption of the risk? (2) Was the trial court's use of jury instructions varying from current pattern jury instructions reversible error? (3) Did the trial court err in denying plaintiff's request for jury instructions on gratuitous employee and *respondeat superior?* (4) Did the trial court err in denying plaintiff's motion for a new trial?

## B.

### Contributory Negligence and Assumption of the Risk

[¶ 8.] Heidi Aldentaler's young life was cut short while helping her family with what turned out to be a more hazardous task than anticipated. For the jury, the primary fact question was whether she was killed purely through the negligence of others or whether her death occurred partly by her own negligence or her assumption of the risk. Over plaintiff's objection, the trial court gave instructions on

both contributory negligence and assumption of the risk.[1]

[¶ 9.] The record shows that there were conflicting accounts of Heidi's response to Sandra's cry of danger. Competent evidence in the record supports the view that Heidi may have attempted to prevent the fall of the addition. Taking that view, the jury could have decided that, in not springing out of the way, Heidi was either negligent or assumed the risk of trying to hold up the addition and thus contributed to her own death. Accordingly, the trial court did not err in giving instructions on contributory negligence and assumption of the risk.

[¶ 10.] Plaintiff next contends that the court erred in giving former pattern jury instructions on contributory negligence and assumption of the risk, instead of the more current revised pattern instructions. These instructions were revised to simplify and modernize the language, not to change the law. No prejudice appears to have occurred from having used the older instructions. Accordingly, it was not reversible error that the trial court gave them, though we prefer that courts use the most recent pattern instruction, unless a court concludes that the latest version incorrectly states the law.

## C.

### Gratuitous Employee and Respondeat Superior

[¶ 11.] Plaintiff argues that the trial court erred in refusing to instruct the jury on the law regarding gratuitous employees and *respondeat superior.* By statute, South Dakota recognizes the status of gratuitous employees. SDCL 60–3–1 provides:

One who undertakes to do a service for another without consideration is not bound to perform the same unless it is entrusted to him at his own request in which case he must perform fully. If he commences performance he must use slight diligence and care at least. In other cases a gratuitous employee may relinquish the employment at any time.

This statute defines the standard of care for the work performed by gratuitous employees but does not define what exactly constitutes a gratuitous employee. According to the Restatement (Second) of Agency, "[o]ne who volunteers *services* without an agreement for or expectation of reward may be a servant of the one accepting such services." § 225 (1958) (emphasis added). Furthermore, South Dakota law "contemplates that one who undertakes to do a service for another at the other's request but without consideration is a gratuitous employee while engaged in the performance of such service." *Schmeling v. Jorgensen,* 77 S.D. 8, 13–14, 84 N.W.2d 558, 561 (1957). Certainly, then, for a person to be "gratuitous employee," the employer must have requested the employee's "service."

[¶ 12.] It is undisputed that Harley Hoisington had no agreement for or expectation of recompense for his assistance in this project. But was he performing a service as an employee? The Restatement defines "servant" as "an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." § 2(2). According to the testimony of her daughter, Margaret was "super-

---

1. We review the jury instructions by construing them together; the instructions are not erroneous if, when so construed, they provide a full and correct statement of the law applicable to the case. *Frazier by and through*

*Frazier v. Norton by and through Norton,* 334 N.W.2d 865, 870 (S.D.1983). Only those instructions that have support in the evidence should be given to the jury. *State v. Weisenstein,* 367 N.W.2d 201, 206 (S.D.1985).

vising the removal." Margaret supposedly had knowledge of how the addition was built and thus could help in telling Hoisington how to disconnect it. In South Dakota, we have consistently held that the right to control the means and methods used by the worker in the performance of the job is the primary element in determining whether an employer-employee relationship exists. *Egemo v. Flores*, 470 N.W.2d 817 (S.D.1991); *Halverson v. Sonotone Corp.*, 71 S.D. 568, 27 N.W.2d 596 (1947). It is a question of fact whether an employer-employee relationship existed. *Steen v. Potts*, 75 S.D. 184, 189, 61 N.W.2d 825, 828 (1953). We conclude that there was evidence in the record to support the submission of that question to the jury and that the trial court erred in refusing jury instructions on the gratuitous employee doctrine and *respondeat superior. Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900 (S.D. 1994) (negligent supervision); *Bass v. Happy Rest, Inc.*, 507 N.W.2d 317 (S.D. 1993) (*respondeat superior*).

## D.

### Extraneous Information Conveyed to Jurors

[¶ 13.] Plaintiff argues that the jurors' knowledge of Margaret's liability insurance requires a new trial and that the court erred in not so ordering. SDCL 19–14–7 (Rule 606(b)) provides, in pertinent part, that "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." *See State v. Boyles*, 1997 SD 99, 567 N.W.2d 856. Therefore, when a party attempts to impeach the verdict on the basis of juror misconduct and relies on testimony from a juror, that party must show evidence of extrinsic interference with the deliberations of the jury. In reviewing reasons "held adequate to set

aside a verdict" for jury misconduct, we have found "some common patterns." *Buchholz v. State*, 366 N.W.2d 834, 839 (S.D.1985).

[¶ 14.] One example of extrinsic interference is information introduced to the jury from outside the trial process. *Id.* The affidavit of Juror Freeman reveals that the jury was improperly exposed to an external fact. SDCL 19–12–13 provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue of whether he acted negligently or otherwise wrongfully. This section does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Undoubtedly, it is unusual that a plaintiff would argue that a jury's hearing of liability insurance would prejudice the plaintiff's case. As we explained in *Atkins v. Stratmeyer*, the rule against the mention of insurance "evolved as a way to protect defendants from the possibility that a jury may be influenced in its findings of liability or damages by the mention of insurance." 1999 SD 131, ¶ 12, 600 N.W.2d 891, 896. Indeed, "[t]he cases reversed because a plaintiff has revealed a defendant's insured status are legion and need not be cited." *Arbach v. Gruba*, 89 S.D. 322, 327, 232 N.W.2d 842, 845 (1975). However, "the fact that a plaintiff's use of this information is consistently error is no reason for holding that a defendant's use of the same prejudicial statement is consistently permissible." *Id.* Here, defendant's counsel was scrupulous, as was plaintiff's counsel, in not mentioning liability insurance, but the fact remains that plaintiff's case, according to Freeman's affidavit, was undermined by this extraneous information.

[¶ 15.] Freeman's affidavit surmounts the first two difficulties facing a party attempting to set aside a jury verdict for extrinsic interference: the affidavit is itself "evidence competent to attack the verdict" and establishes "the existence of a recognized ground to overturn the jury's verdict." *Buchholz,* 366 N.W.2d at 838. Still, there must also be a showing that the party seeking to set aside the verdict was prejudiced by the misconduct. *Id.* The test is whether the extraneous matter had a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the evidence and the instructions of the court. *See Panko v. Flintkote Co.,* 7 N.J. 55, 80 A.2d 302 (1951).

[¶ 16.] According to Freeman's affidavit, many of the jurors, after learning what the highway patrolman had told Freeman, "seemed to be of the impression that [the existence of liability insurance] put the family all in cahoots with each other, including [Margaret], so they should receive nothing from us." As learning through an extraneous source that a defendant has liability insurance *may* influence a jury to vote *against* the defendant regardless of the evidence, so gaining that information through such a source *may* influence a jury, in a case between parties supposedly "in cahoots" with one another, to punish, not only the plaintiff, but, as here, the entire family, by voting *for* the defendant regardless of the evidence. What is striking about the circumstances confronting us here is that, as the record shows, it is the affidavit of a juror who voted *for* the defendant that attests that many jurors believed the parties to be "in cahoots." [2] It is true that these jurors took supposedly objective information and formed their own subjective beliefs about it. Yet it was this outside information, from what may have seemed to be an authoritative source, that tended to influence the jurors in de-

ciding in a manner inconsistent with the instructions if not the evidence as well.

[¶ 17.] We reverse and remand for a new trial.

[¶ 18.] GILBERTSON, Chief Justice, and AMUNDSON, Justice, and GORS, Acting Justice, concur.

[¶ 19.] SABERS, Justice, concurs specially.

[¶ 20.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (concurring specially).

[¶ 21.] I concur in all respects except that I write specially on Issue C. Gratuitous Employee and Respondeat Superior, to point out that on this record:

Margaret Thuringer is the owner and employer;

Harley Hoisington, and his friend, Sandra Madsen, are her agents and appear to be gratuitous employees;

Heidi Aldentaler, along with her mother, Delaine Aldentaler, appear to be gratuitous employees.

[¶ 22.] On retrial, the questions of negligence, contributory negligence and assumption of the risk must be measured under the gratuitous employee doctrine of SDCL 60-3-1, *Schmeling,* 77 S.D. 8, 84 N.W.2d 558, and *Smith v. Community Co-Operative Association of Murdo,* 87 S.D. 440, 209 N.W.2d 891 (1973), and the employer would be bound by her own negligence, if any, and the negligence, if any, of her agents, Harley Hoisington and Sandra Madsen. *See also Nelson v. Nelson Cattle Co.,* 513 N.W.2d 900 (S.D.1994).

---

2. The jurors voted 10 to 2 for the defendant.