UNITED STATES of America, Appellee,

v.

**Daniel Paul RICHMANN, Appellant.**

No. 87–5369.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1988.

Decided Oct. 26, 1988.

Rehearing and Rehearing En Banc
Denied Dec. 13, 1988.

Paul W. Rogosheske, South St. Paul, Minn., for appellant.

Jon M. Hopeman, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BROWN,* Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Daniel Paul Richmann appeals his conviction for conspiracy to distribute cocaine. We affirm.

## I. Background

In December of 1985, Richmann, who has a history of cocaine abuse, contacted a Drug Enforcement Administration (DEA) agent. He told the agent that he would be willing to provide the DEA with the names of many of the large cocaine dealers in the Minnesota Twin Cities area. In connection with this call, Richmann was contacted in February of 1986 by another agent, Sergeant Harry Baltzer of the DEA Task Force. Richmann and Baltzer met and it was agreed that Richmann would provide Baltzer with information about Vasilios (William) Loukas, a large drug dealer in the area and one of Richmann's codefendants.

---

* The HONORABLE JOHN R. BROWN, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

Initially, in order to test Richmann's reliability, Baltzer asked Richmann to arrange the introduction of a drug dealer to an undercover agent of the DEA. The introduction was made and the agent purchased a small amount of cocaine from the dealer. In early March of 1986, Baltzer and the DEA decided not to use Richmann as an informant in the future. This decision was made after Baltzer learned from another informant that Richmann had discussed his involvement with the DEA with persons involved in the drug business. However, Richmann was not told that he was no longer working with the DEA. It was felt that to do so would compromise the informant who had told Baltzer of Richmann's activities.

From March of 1986 until his arrest in December of 1986, Richmann continued to associate and deal with Loukas in the distribution of cocaine. On December 18, 1986, a DEA agent, an agent of the Internal Revenue Service and an agent of the Federal Bureau of Investigation executed a search warrant at Richmann's office. Richmann was present during the search. As it progressed Richmann offered a substantial amount of information about his dealings with Loukas and indicated where in the office physical evidence of these activities was located. During the course of the search, Richmann was advised of his *Miranda* rights after which he continued to provide the officers with information.

Richmann was later indicted along with three drug dealers. Following a jury trial, Richmann was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846 and sentenced to eighteen months imprisonment.

## II. Discussion

### A. Third Party Contact by a Juror

■ Following his conviction, Richmann filed a motion for a new trial pursuant to Fed.R.Crim.P. 33 based on grounds of juror misconduct. Richmann claimed that one of his character witnesses was approached, after he testified, by a man in the parking garage adjacent to the courthouse. This individual allegedly told the witness that he had spoken to one of the jurors and the juror told him that he thought Richmann was being taken advantage of and "taken down the primrose lane" by the government. Following a hearing at which the witness related this incident, the court denied Richmann's motion for a new trial and his request to question the individual juror about the incident.

"[A]ny communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial. (Citations omitted.) This presumption of prejudice is not conclusive, but 'the burden rests heavily upon the Government to establish * * * that such contact with the juror was harmless to the defendant.'" *United States v. Delaney*, 732 F.2d 639, 642 (8th Cir.1984) (quoting *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954)). However, Richmann has not alleged that the juror was improperly influenced or that information prejudicial to Richmann was communicated to the juror. The government asserts, therefore, that since the juror was not exposed to any improper influence or prejudicial information, the contact was harmless.

Unless there has been an abuse of discretion by the trial court, we will not set aside the court's decision to deny the motion. *United States v. Conzemius*, 611 F.2d 695, 696 (8th Cir.1979). We find that the misconduct complained of, if any, was harmless to Richmann. No information appears to have been conveyed to any member of the jury. Rather, if Richmann's witness is believed, it appears that this juror was expressing an idea which was favorable to Richmann. There was no evidence that this particular juror, or any other member of the panel, had been exposed to prejudicial information or evidence other than that which was introduced at the trial. In fact, as indicated, the comment the juror purportedly made to Richmann's witness was beneficial to Richmann and detrimental to the government. Therefore, a new trial was not warranted.

■ As regards Richmann's request to question the jury, it is generally considered preferable to insulate jury deliberations. "The policy does not, however, foreclose testimony by jurors as to prejudicial extraneous information or influences injected into or brought to bear upon the deliberative process." *Scogin v. Century Fitness, Inc.*, 780 F.2d 1316, 1319 n. 5 (8th Cir.1985). There being no showing, however, that this was the situation, the district court was correct in not making further inquiry into the jury deliberations.

## B. Inadmissible Evidence

■ Richmann's second assignment of error involves the testimony of Sergeant Baltzer concerning the reason he discontinued his use of Richmann as a confidential informant. Baltzer testified at trial that he had received information from an informant that Richmann had stated at a party that he had compromised a DEA agent. Baltzer further testified that Richmann had recited that he had provided specific information to other drug traffickers about the DEA agent, including a description of the agent and the agent's undercover name.

Richmann objected to the testimony claiming it was hearsay. In addition, he argued that because his DEA involvement was a crucial part of his defense, the testimony was unfairly prejudicial and the prejudice outweighed the probative value of the testimony. Richmann also claimed that the admission of the statements of the unidentified informant violated his sixth amendment right to confront the witnesses against him. The government argued that the Baltzer testimony was admissible because it was offered only to show the state of mind of Baltzer at the time he made the decision not to use Richmann as an informant, and not for its truth. The district court ruled that the testimony should be admitted on that basis and instructed the jury that they were not to consider the testimony for the truth of the statements made by Richmann, but rather to consider it as relating to why Baltzer acted as he did. Agent Baltzer's activities within the context of the entire drug investigation were proper matters for the jury to evaluate.

"[E]videntiary rulings are reviewed for an abuse of discretion only * * *" and Richmann has the burden of showing that the district court abused its discretion in admitting the testimony of Baltzer. *United States v. Janis*, 831 F.2d 773, 779 (8th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988). Since Baltzer's testimony as to the informant's statement was of consequence in the determination of issues properly before the jury and the informant's statement was not hearsay as defined by the rules of evidence, the evidence was admissible. We also find, as did the district court, that the evidence was not unfairly prejudicial nor did it violate Richmann's sixth amendment rights.

## C. Richmann's Confession

During the search of his office, Richmann spontaneously provided extensive information about his activities with Loukas. About two hours into the search, the agents advised Richmann of his *Miranda* rights after which he repeated much of the information he had already given. Richmann, in a pretrial motion, requested that these statements be suppressed. The trial court denied the motion.

■ Richmann claims that the statements he made during the search were taken in violation of his fifth amendment right against self-incrimination, in spite of the fact that he repeated the statements after receiving *Miranda* warnings. The Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) held that law enforcement officers are required to advise a suspect of his fifth and sixth amendment rights prior to a custodial interrogation. The Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612. We find that Richmann was not in custody during the search of his office. He was never denied permission to leave the office, nor did he ask to do so. He was denied permission to contact his wife.

However, that does not constitute a significant deprivation of his freedom. Even if Richmann could be considered to have been in custody during the search, his confession is still admissible because he voluntarily repeated his earlier spontaneous but unwarned statements after the administration of the *Miranda* warnings. *Oregon v. Elstad,* 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985).

### D. Sufficiency of the Evidence

█ In order to convict Richmann of conspiracy to distribute cocaine, the government had to prove beyond a reasonable doubt that there was an agreement among the coconspirators, one of whom being Richmann, to commit an offense against the United States. In addition, the government must prove that there was an overt act by one of the coconspirators in furtherance of the agreement. Richmann's defense at trial was that he did not engage in any overt acts in furtherance of the agreement with the intent to commit a crime. He claims that he could not have formed the requisite intent because he believed he was working with the DEA. His intent was to assist the DEA, not, he claims, to commit a crime. In the alternative, he asserts that he was a victim of entrapment.

In reviewing a claim regarding the sufficiency of the evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We recognize that the government had the burden of proving all elements of the crime and of proving that Richmann had a predisposition to commit the crime if entrapment is alleged. *United States v. Irving,* 827 F.2d 390, 392 (8th Cir.1987). Having reviewed the evidence presented at trial, we find that there was sufficient evidence for the jury to convict Richmann.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.