UNITED STATES of America

v.

**Robbin Delmar MUSGRAVE.**

**No. C–CR–89–127.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Dec. 14, 1989.

---

Carl Horn, Asst. U.S. Atty., Charlotte, N.C., for U.S.

William K. Diehl, Charlotte, N.C., for Robbin Delmar Musgrave.

## ORDER

ROBERT D. POTTER, Chief Judge.

### I. PROCEDURAL BACKGROUND

THIS MATTER is before the Court on a Memorandum and Recommendation ("M & R"), filed by United States Magistrate Paul B. Taylor on November 17, 1989. The M & R is in response to a Motion to Suppress statements and evidence filed by Defendant on October 26, 1989. The Magistrate conducted a hearing on this matter on November 6, 1989. On December 1, 1989, the Government filed objections to the Magistrate's Conclusions of Law. Defendant chose not to file objections to the M & R.

### II. STANDARD OF REVIEW

Title 28, United States Code, Section 636 requires the Court to make a de novo review of those portions of an M & R to which objection is made. The Court may accept, reject or modify the findings or recommendations made by the magistrate. Moreover, the Court may also receive further evidence.

In this case, the Court has carefully reviewed the entire record. In particular, the Court has read Defendant's Motion to Suppress, the Government's response to the Motion to Suppress, the M & R and case law cited therein, and the Government's objections to the M & R. The Court has also listened to the lengthy tape of the November 6, 1989 hearing. Furthermore, the Court has conducted extensive, independent research regarding the two legal issues presented.

Attached to the Government's objection is the affidavit of United States Customs

Agent Ronald R. Taylor. Mr. Taylor was unable to testify at the November 6, 1989 hearing because he was out of town. However, his testimony is substantially similar to that of United States Customs Agent Larry F. Harrell who did testify at the hearing. Therefore, the Court does not believe it is necessary to hold another hearing in order to receive Agent Taylor's testimony. Nonetheless, the Court does believe 28 U.S.C. § 636 permits the Court to consider the affidavit as further evidence. *See Proctor v. State Government of North Carolina,* 830 F.2d 514 (4th Cir.1987) (finding that court may consider any additional evidence submitted by parties in conducting de novo review). However, because the affidavit does not shed additional light on the factual background of this matter and Defendant objected to its use in a motion filed December 11, 1989, the Court will not consider Agent Taylor's affidavit. *See* Order filed December 12, 1989 granting Defendant's Motion to Strike Agent Taylor's affidavit.

### III. FACTUAL BACKGROUND

The Government does not object to the Magistrate's Findings of Fact. The Court's review of the November 6, 1989 hearing confirms that Defendant and Government agree on the significant facts of this matter. The disagreement between the parties is how the facts relate to the appropriate application of the law. For the sake of clarity, the Court will highlight the relevant factual background of this matter.

On August 2, 1989, Special Agent Larry F. Harrell of the United States Customs Service obtained an anticipatory search warrant authorizing a search of Defendant's apartment in Statesville, North Carolina. The Customs Service suspected Defendant of receiving a videotape through the mail entitled "Lolita Orgy" which contained child pornography in violation of 18 U.S.C. § 2252. The tape was sent to Defendant by Santos Videos—an undercover Customs Service sting operation. The search warrant authorized the seizure of that tape, other child pornography materials, and records and correspondence relating to child pornography.

The search warrant was executed on August 3, 1989 at 4:30 p.m. An undercover agent posing as a delivery man delivered the Lolita Orgy tape to Defendant. Fifteen minutes later, Agent Harrell and seven other law enforcement personnel knocked on Defendant's door. Defendant answered the door and retrieved from the pantry the package that had just been delivered containing the Lolita Orgy videotape. At Agent Harrell's request, Defendant obtained for the agents videotapes from his bedroom. Other videotapes were found by the officers in the pantry. ·

In addition to the Lolita Orgy videotape, a total of thirteen other videotapes were found. Twelve of those videotapes appeared to Agent Harrell to be commercially produced x-rated pornography. The other videotape appeared to have been a copied videotape which had a handwritten title "Down on the Farm." In accordance with standard operating procedure, the agents made a cursory review of each videotape on Defendant's V.C.R. to determine if the tapes contained pornography. All thirteen videotapes contained some form of pornography. Therefore, the videotapes were seized for later review at the Custom Service's office to determine if any of the videotapes contained child pornography. The search for the videotapes and records took about fifteen minutes.

Shortly after finding the videotapes, Defendant was told by Agent Harrell that he would not be placed under arrest at that time, but that the United States Attorney would be consulted and would decide whether to pursue the case. Agent Harrell testified at the hearing that Defendant stated he understood he was not under arrest. Defendant corroborated this testimony at the hearing by stating he knew he was not under arrest.

Thereafter, Agent Taylor asked Defendant if he would mind stepping into a back bedroom. According to Agent Harrell, this was done to ensure Defendant's privacy as his girlfriend and roommate were present in the apartment. Defendant testified at the hearing that Agent Taylor did not phys-

ically escort Defendant to the bedroom. However, because of the number of officers in the apartment, Defendant stated that he did not feel that he had a choice in following the agents to the bedroom.

Agent Taylor questioned Defendant for a total of thirty to forty-five minutes. At no time were more than three officers present in the bedroom and most of the time only Agent Taylor and Postal Inspector James A. Charlton were present. Agent Harrell testified at the hearing that he heard most of the conversation between Agent Taylor and Defendant. According to Agent Harrell, the tone of the conversation was normal. No threats were made nor was any force used to coerce Defendant's statements. The Agents questioning Defendant did not display their weapons, although three uniformed officers present during the search had weapons visibly displayed. No one raised their voice although Defendant testified that Agent Taylor spoke "sternly" to him several times when questioning his truthfulness but did not "shout or raise his voice." Overall, Defendant's testimony about the conversation was consistent with that of Agent Harrell.

After the agents completed their search and conversation with Defendant, the officers left the apartment. The agents were at the apartment for one hour. Defendant was not placed under arrest at that time.

## IV. THE PARTIES' CONTENTIONS

Defendant argues that any statements made during the search of his apartment should be suppressed. According to Defendant, the statements he made during the search were obtained through coercion. Because Defendant's freedom of action was restrained in a significant way, Defendant contends that he was entitled to be apprised of his *Miranda* rights prior to any questioning by Agent Taylor. Accordingly, Defendant maintains that the statements were illegally elicited, and should be suppressed.

Defendant also argues that the seizure of the thirteen non-child pornographic videotapes were outside the scope of the search warrant. Defendant does not challenge the seizure of the "Lolita Orgy" videotape. Defendant also contends that no valid exception to the Fourth Amendment justifies the seizure of the thirteen videotapes. Moreover, Defendant argues that possession of adult pornography in his home is constitutionally protected. Therefore, Defendant believes that the thirteen videotapes should be suppressed.

The Government argues that an appropriate application of current Fourth Circuit law indicates Defendant was not in custody for purposes of *Miranda*. Therefore, any statements Defendant made should not be suppressed.

In regard to Defendant's argument that the thirteen non-child pornographic videotapes should be suppressed, the Government counters by arguing that the tapes were found in the plain view of the officers. Even though those tapes are not illegal, the Government argues that the tapes may show Defendant's predisposition towards possessing child pornography. Hence, the Government argues that the relevance of the tapes is an evidentiary issue that must be decided at trial by the trial court. Furthermore, the Government asserts that Defendant's constitutional right to possess adult pornography in his home is inapplicable to this case because child pornography is involved.

## V. THE MAGISTRATE'S LEGAL CONCLUSIONS

The M & R adopts Defendant's arguments. The Magistrate found that Defendant was "deprived of his freedom of action in a significant way" when he was "detained" during the execution of the search warrant. M & R at 9. The Magistrate emphasized that eight law enforcement officers executed the search warrant and that Defendant was not free to go during the search. Thus, the officers were required to advise Defendant of his *Miranda* rights prior to initiating questioning. According to the Magistrate, statements obtained from Defendant are suppressible.

The Magistrate also found that the seizure of the thirteen non-child pornographic

videotapes was outside the scope of the search warrant. M & R at 12. Furthermore, the Magistrate dismissed the Government's plain view argument by noting that the doctrine requires that it be "immediately apparent" to the police that the item they spot in plain view is evidence of a crime. In this case, it was not immediately apparent to the officers upon their review of the videotapes that the videotapes were evidence. M & R at 15. Therefore, the Magistrate believes the videotapes should have been returned to Defendant especially in light of Defendant's First Amendment interests in possessing adult pornography.

## VI. THE COURT'S LEGAL CONCLUSIONS

### A. *The Statements of Defendant.*

It is well settled that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards efficient to secure the privilege against self-incrimination." *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The decision in *Miranda* was undoubtedly designed to reduce the inherent coercive nature of interrogations conducted behind the closed doors of police stations. *Id.* at 447–456, 86 S.Ct. at 1613–1618. "In the cases before us today, given this background, we concern ourselves primarily with this interrogation atmosphere and the evils it can bring." *Id.* at 456, 86 S.Ct. at 1618.

Although the clear thrust of *Miranda* is the protection of an individual's constitutional right against self-incrimination when a person is subjected to station-house custody, *Miranda* also anticipates the situation short of custody but where a person is deprived of "his freedom by the authorities in any significant way." *Id.* at 478, 86 S.Ct. at 1630. However, the Court's decision in *Miranda* did not adequately define what degree of restraint of an individual's freedom amounts to custody. Subsequent decisions have addressed the degree of restraint necessary to invoke *Miranda* protection.

Fortunately for the Court, the Fourth Circuit Court of Appeals has enunciated criteria that are to be used in making the determination whether an individual's freedom of action has been constrained to such an extent that implements the necessity of *Miranda* warnings. The question of whether an individual is in custody for purposes of *Miranda* must be made on a case-by-case basis. *United States v. Jones*, 818 F.2d 1119, 1123 (4th Cir.1987); *Davis v. Allsbrooks*, 778 F.2d 168, 171 (4th Cir.1985). The ultimate inquiry for the Court is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Id.; see also California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). The Fourth Circuit has held that it is not custody per se that triggers the necessity of *Miranda* but the custodial nature of an interrogation. *Jones*, 818 F.2d at 1119.

In this case, it is undisputed that Defendant was not placed under formal arrest. Defendant testified at the hearing that he understood that he was not going to be arrested during the search. It is also undisputed that Defendant was at no time read the *Miranda* warnings. Therefore, the Court is left with the task of determining whether any restraint imposed on Defendant's freedom of movement amounted to a formal arrest.

Anytime a law enforcement officer has contact with a citizen a certain amount of restraint exists. The reasonable person would not feel free to immediately leave or proceed upon his way if stopped by a police officer. *See Berkemer v. McCarty*, 468 U.S. 420, 436, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317 (1984) (acknowledging that a traffic stop *significantly* curtails the driver and passenger's freedom of action) (emphasis added). However, the Supreme Court has consistently upheld the admissibility of statements procured without *Miranda* warnings where the individual's freedom of action has been significantly impaired. *Id.* at 437–38, 104 S.Ct. at 3148–

49 (traffic stops); *id.* at 440, 104 S.Ct. at 3150 (*Terry*-stops do not require *Miranda* warnings); *see also Pennsylvania v. Bruder,* — U.S. —, 109 S.Ct. 205, 207, 102 L.Ed.2d 172 (1988) (per curiam) (holding that ordinary traffic stops do not involve custody for purposes of *Miranda*); *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (holding that *Miranda* warnings not required simply because questioning takes place in station house); *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (refusing to suppress statements just because interview occurred in coercive environment). The key determination is *not* whether an individual's freedom of action has been curtailed in some manner, but whether the restraint is similar to that of a formal arrest.

As noted above, the court in *Miranda* sought to address questioning in the coercive atmosphere of police stations. However, by applying the test that the restraint must be similar to that of a formal arrest, the Supreme Court has upheld interrogations even in police stations. *See Beheler,* 463 U.S. at 1125, 103 S.Ct. at 3520; *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714. The Fourth Circuit has also upheld statements obtained without *Miranda* warnings in police stations where the individual was subjected to some restraint on his freedom of action, but where that restraint was not analogous to a formal arrest. *Davis,* 778 F.2d at 171 (finding *Miranda* warnings not required where individual given ride to police station, escorted by police officers to bathroom, and questioned even after he told officers he no longer wanted to talk about the case); *see also Jones,* 818 F.2d at 1125. The Fourth Circuit has recognized that "any encounter with police may be both anxious and unpleasant no matter what kind of treatment the individual receives." *Davis,* 778 F.2d at 172. Where the police behavior is "loose-reined," the "incommunicado interrogation in a police-dominated atmosphere" deplored by *Miranda* does not exist, thus permitting questioning without *Miranda* warnings. *Id.; accord United States v. Stanley,* 597 F.2d 866, 869 (4th Cir.1979) (individual's subjec-

tive view that questioning took place in "coercive environment" does not trigger necessity of *Miranda* warnings).

◼ Where questioning occurs in the familiar surroundings of a person's home or place of business, the chances that a restraint will be similar to that of a formal arrest are greatly diminished. *United States v. Hocking,* 860 F.2d 769, 774–75 (7th Cir.1988) (three hours of questioning in individual's home); *United States v. Richmann,* 860 F.2d 837, 840–41 (8th Cir.1988) (*Miranda* warnings not required for statements made during search of defendant's office), *cert. denied,* — U.S. —, 109 S.Ct. 2429, 104 L.Ed.2d 986 (1987); *United States v. Phillips,* 688 F.2d 52, 55 (8th Cir.1982) (Defendant not in custody for purposes of *Miranda* because he was in his own home); *United States v. Berlin,* 707 F.Supp. 832, 838 (E.D.Va.1989) (forty minute questioning in defendant's home did not subject him to custodial interrogation). However, it is possible that questioning in a person's home may eventually rise to custodial interrogation, especially where the atmosphere is coercive and the questioning is not brief. Where the questioning is brief and no physical force is used, any coercive impact of the questioning is reduced. *See United States v. Wong Ching Hing,* 867 F.2d 754, 756 (2d Cir.1989) (30 minute traffic stop did not require *Miranda* warnings); *Hocking,* 860 F.2d at 773 (3 hour questioning did not amount to custodial interrogation). The First Circuit Court of Appeals has considered factors such as the familiar or neutral setting of the questioning, the small number of law enforcement officials present, the degree of physical restraint, and the duration of the questioning in determining whether *Miranda* warnings were required. *See United States v. Masse,* 816 F.2d 805, 809 (1st Cir.1987); *United States v. Quinn,* 815 F.2d 153, 161 (1st Cir.1987); *United States v. Streifel,* 781 F.2d 953, 961 (1st Cir.1986).

◼ In this case, the Court believes that the restraints placed on Defendant were similar to that of a formal arrest. Defendant was questioned up to forty-five minutes without being apprised of his *Mi-*

*randa* rights. While being questioned, eight officers were present in a small apartment. Three of the officers were uniformed and visibly armed. It is simply unreasonable to believe Defendant was not subjected to the same restraints experienced by a person placed formally under arrest. The only element of a formal arrest missing in this situation was the failure of the officers to say, "You're under arrest."

The Court believes the Government's reliance on *Jones* and *Davis* is misplaced. In both of those situations, the defendants *voluntarily* went to a police station. *See Jones*, 818 F.2d at 1123; *Davis*, 778 F.2d at 171. The voluntary nature of the questioning minimized any coercive impact. In this case, Defendant had no choice in staying at the apartment. The officers secured the premises in order to execute the search warrant. Therefore, Defendant was subjected to a coercive environment when questioned by Agent Taylor.

The questioning in this case is also distinguishable from an ordinary traffic stop. A traffic stop occurs in public, and the exposure to public view reduces the ability of an unscrupulous policeman from using illegitimate means to elicit self-incriminating statements. The motorist is not likely to fear he will be subjected to abuse if he does not cooperate. Moreover, the motorist realizes that he will be given a citation and be permitted to proceed on his way after several minutes. *Berkemer*, 468 U.S. at 438-39, 104 S.Ct. at 3149-50.

The questioning of Defendant in this case did not occur in public. Instead, Defendant was placed in a closed room with three officers. Although he realized he would not be placed under arrest, it cannot be said that Defendant knew he would be free to leave after several minutes. In fact, Defendant's freedom of movement was significantly restrained for over an hour.

The Court believes the decision in *Dornhofer* is also distinguishable from this case. In *Dornhofer*, the defendant voluntarily made spontaneous and un-elicited statements to the officers within the first sever-

al minutes of the search. *See United States v. Dornhofer*, 859 F.2d 1195, 1197 (4th Cir.1988). The Fourth Circuit found that Defendant had not been subjected to custodial interrogation. *Id.* at 1200. The facts in this case are very different. The statements Defendant made were not spontaneous but elicited by Agent Taylor during the course of a lengthy interrogation.

The Court's examination of the totality of the circumstances in this case leads it to conclude Defendant was entitled to be read the *Miranda* warnings. "The only relevant inquiry is how a reasonable man in the suspect's position would have understood his position." *Davis*, 778 F.2d at 171 (citing *Berkemer*, 468 U.S. at 438, 104 S.Ct. at 3149). The Court believes that a reasonable person in Defendant's position would believe that he was in custody. Moreover, the Court agrees with the Magistrate that the only explainable reason Agent Taylor failed to read the *Miranda* warnings was to by-pass the requirements of *Miranda*. The Court cannot condone such actions by law enforcement personnel and would suggest that officers advise individuals of their *Miranda* rights during the execution of a search warrant if they plan to elicit statements from those individuals.

To summarize, the Court believes that the restraints placed on Defendant were similar to a formal arrest. A reasonable person in Defendant's situation would have believed he was in custody. Therefore, Defendant was entitled to be read the *Miranda* warnings prior to any questioning. Because the officers failed to advise Defendant of the *Miranda* warnings, any statements Defendant made must be suppressed. The Court will affirm the portion of the M & R granting Defendant's Motion to Suppress the Statements.

### B. *Thirteen Non–Child Pornographic Videotapes*

■ The Magistrate concluded that the seizure of the thirteen non-child pornographic videotapes was outside the scope of the search warrant. M & R at 12. The Government's objection does not specifically contend that the Magistrate was incorrect in making such a determination. In-

stead, the Government argues that the plain view doctrine allows the videotapes not to be suppressed.

The Court agrees with the Magistrate that the seizure of the non-child pornographic videotapes was outside the scope of the search warrant. It is clear from the record that the affidavit filed by Agent Harrell tracked the language of 18 U.S.C. §§ 2252 and 2256. Hence the seizure of adult pornography that is not evidence of Defendant violating 18 U.S.C. §§ 2252 and 2256 is not contemplated by the search warrant. Those videotapes should be suppressed unless the seizure is justified by a recognized exception to the Fourth Amendment.

The Government argues that the plain view doctrine is applicable to this case. The plain view doctrine was recognized by the United States Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The court stated "that under certain circumstances the police may seize evidence in plain view without a warrant." *Id.* at 465, 91 S.Ct. at 2037. The plain view exception allows the police to seize evidence of a crime when the officer enters a place in a constitutionally proscribed manner. The doctrine is especially appropriate where "the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Id.* at 465, 91 S.Ct. at 2037. The rationale for the doctrine is that the privacy interest protected by the Fourth Amendment is not compromised when an officer has a legitimate reason to enter a residence and views additional incriminating evidence. The original justification in entering the residence extends to legitimize the seizure of additional incriminating evidence found in plain view.

The United States Supreme Court has enunciated a three-part test to determine if the plain view exception will permit the seizure of an item outside the scope of a search warrant. *See Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983).

First, the officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretext. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Id;* (citing *Coolidge*, 403 U.S. at 465–70, 91 S.Ct. at 2037–40).

When an officer meets the three prongs of the test, the owner of the object interest in the object is merely possessory. The initial legitimate intrusion has already compromised any privacy interest. Hence, a seizure of an item in plain view is presumably reasonable. *Id.* at 738–39, 103 S.Ct. at 1541–42.

Although the Magistrate did not specifically apply the mandated plain view doctrine test, it appears to the Court the only disputed issue is the third, "immediately apparent" prong. Obviously, prong one was met by the officers because they had a search warrant. Thus, the officers made a lawful intrusion into Defendant's apartment. The second prong also appears to have been met by the officers because they did not apply for the search warrant in order to "find" incriminating evidence. In other words, the officers did not manufacture the original intrusion for the sole purpose to gain access to the apartment in order to find the thirteen non-child pornographic videotapes. Instead, the purpose of the initial intrusion was to seize the child pornography. The seizure of non-child pornography was merely incidental to the initial intrusion.

In order to determine whether it was immediately apparent to the officers that the non-child pornographic videotapes were "evidence of a crime, contraband, or otherwise subject to seizure," the Court must determine whether the agents had probable cause to seize the videotapes. *See Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 1153,

94 L.Ed.2d 347 (1987). In this case, it is apparent to the Court that probable cause existed for the agents to believe that the non-child pornographic videotapes were evidence of a crime. The search warrant authorized the seizure of child pornography. As the Magistrate indicated, it was reasonable for the agents to assume that the videotapes might have contained some child pornography. M & R at 15–16. However, further inspection revealed the videotapes did not contain child pornography. Nonetheless, that subsequent discovery does not somehow destroy the probable cause that existed when the videotapes were first seized.

Even if the videotapes were not evidence of child pornography, the agents had probable cause to believe the videotapes were "evidence" to corroborate Defendant's predisposition to possess pornography. *See Andresen v. Maryland,* 427 U.S. 463, 483, 96 S.Ct. 2737, 2749, 49 L.Ed.2d 627 (1976) (holding that proof of similar acts discovered during search not suppressible); *United States v. Presler,* 610 F.2d 1206 (4th Cir. 1979); *United States v. Phillips,* 593 F.2d 553 (4th Cir.), *cert. denied,* 441 U.S. 947, 99 S.Ct. 2169, 2170, 60 L.Ed.2d 1050 (1978). The Court questions whether the videotapes will be more probative than prejudicial as required by the Federal Rules of Evidence. As the Government contends, however, evidentiary issues are better addressed at trial through a motion in limine rather than a motion to suppress.

The Court does not believe that *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) is applicable to this seizure. *Stanley* involved the prosecution of a defendant for possessing adult pornography in his home. In this case, Defendant is being prosecuted for receiving child pornography through the mail. The seizure of the non-child pornographic material is for a collateral use and not to prosecute Defendant for his possession of it. Thus, this case is no different than the situation where officers execute a search warrant for illegal narcotics and find packaging baggies and scales in plain view. The possession of the baggies and scales is not illegal but the police may seize those items as evidence of an intent to distribute. The Court simply does not believe *Stanley* prohibits any seizure of adult pornography even if its possession is evidence of some other crime.

The Court believes that the agents had probable cause at the moment they seized the videotapes to believe that the videotapes may have contained child pornography. Once those videotapes were seized for further review, Defendant's privacy interest in the videotapes was eviscerated. The Magistrate's recommendation requires the Court to find that as soon as the review failed to substantiate the presence of child pornography that Defendant's privacy interest reemerged. The Court cannot find any legal support for the proposition that an item lawfully seized must be "unseized" if the product of the seizure is later found to be something other than criminal. Such a holding is contrary to the plain view doctrine.

The Court also does not believe Defendant's alternative Motion pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure is meritorious for the same reasons stated above. Therefore, the Court will not suppress the statements or videotapes on this basis.

### VII. CONCLUSION

NOW, THEREFORE, IT IS ORDERED that the M & R be, and hereby is, AFFIRMED IN PART, REVERSED IN PART, and MODIFIED.

IT IS FURTHER ORDERED that Defendant's Motion to Suppress Statements is GRANTED and Defendant's Motion to Suppress Evidence is DENIED.